(No. 41943.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* ROBERT HUFF, Appellant.

*Opinion filed March 24, 1970.—Rehearing denied May 26, 1970.*

Acton Baldwin Bookwalter & Meyer, of Danville, (Thomas R. Smith, of counsel,) appointed by the court, for appellant.

William J. Scott, Attorney General, of Springfield, and John Morton Jones, State's Attorney, of Danville, (Fred G. Leach, Assistant Attorney General, and Larry P. Cramer, Special Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The defendant, Robert Huff, pleaded guilty to a charge of aggravated kidnapping and was sentenced to imprisonment for a term of not less than 10 nor more than 25 years. After hearing evidence, the circuit court of Vermilion County denied his amended post-conviction petition, and he has appealed.

One count of the indictment charged the defendant with aggravated kidnapping in that he kidnapped a 12-year-old girl; another count charged him with aggravated kidnapping in that he kidnapped and committed rape upon the same girl; another count charged rape of the same girl, and the fourth count charged indecent liberties with that girl. The public defender was appointed to represent the defendant and entered a plea of not guilty. Thereafter a competency hearing was held and it was determined that the defendant was competent to stand trial. The defendant then withdrew his plea of not guilty and entered a plea of guilty to the second count, which charged aggravated kidnapping and rape. After a full admonition the defendant's plea was accepted, the other counts of the indictment were *nolle prossed.*

In his amended post-conviction petition the defendant alleged that his plea of guilty was induced by promises which were not fulfilled and was also induced in part by threats of physical injury to members of his immediate family and that his plea was therefore void. He also contends that his plea was not understandingly or intelligently made, and that the sentence imposed was so severe as to constitute cruel and unusual punishment.

At the evidentiary hearing on the post-conviction petition the defendant and his mother testified that the public defender who represented him had promised him that he would receive a sentence of not less than three nor more than five years. In an earlier letter written to the trial judge from the penitentiary, however, the defendant had stated

that the public defender had promised that he would receive a sentence of one to three years. And in her affidavit attached to the post-conviction petition the defendant's mother stated that the public defender had represented that "the judge would give a light sentence".

The public defender denied making any promise, and testified that it was his policy not to tell defendants what sentence they would receive. He testified, however, that he was somewhat surprised at the severity of the sentence that was imposed. Before the defendant's plea of guilty was accepted, the trial judge fully explained the possible range of the indeterminate sentence that might be imposed, and the colloquy that took place between the defendant and the judge makes it clear that the defendant could not have been under any illusion that there was any agreement as to the duration of the sentence to be imposed.

Another broken promise asserted by the defendant is based upon the fact that prior to his change of plea the public defender had written him the following note: "The State's Attorney has agreed that if you plead guilty to one charge of kidnapping, the other charges will be dropped and he will not recommend either a minimum or maximum sentence but would leave it up to the Court (Judge)." The defendant's position, based upon the wording of this note, is that the agreement was that he plead guilty to a charge of kidnapping, whereas his plea of guilty was actually entered to one of the counts which charged aggravated kidnapping. We find this contention untenable. The indictment charged only aggravated kidnapping and it is obvious that references to kidnapping were understood by everyone to relate to the charges of aggravated kidnapping contained in the indictment. Moreover, the admonition of the trial judge clearly explained to the defendant the ingredients of the offense of aggravated kidnapping to which his plea of guilty was entered.

The defendant's mother testified that before the defend-

ant entered his plea of guilty she had received threatening phone calls, and both she and the defendant testified that prior to his plea his younger sister had been beaten up at school by friends or relatives of the victim of his crime. He contends that these circumstances deprived his guilty plea of its voluntary character. The public defender testified that he had learned, either from the defendant or his mother, that the defendant's sister had been involved in a fight at school, but that the defendant showed no concern at any time "for any of the other people involved in this matter. That is one of the things that caused me to ask for a psychiatric examination." The defendant's mother made no complaint to any person in authority about threatening phone calls until at least four months after the defendant was sentenced. Although the defendant had filed a *pro se* motion for a new trial and, as previously stated, had written to the trial judge from the penitentiary, he made no mention in these communications of any connection between his plea of guilty and the fight in which his sister was involved or the threatening telephone calls until nearly two years after his plea of guilty. In our opinion the defendant's belated contention that his plea was not voluntary was properly denied.

The defendant's contention that the sentence which was imposed constituted cruel and unusual punishment is obviously unsound, for the offense to which the defendant pleaded guilty was the kidnapping and rape of a 12-year-old girl.

The fact that the State's Attorney urged that the judge consider the circumstances of the offense and impose a sentence with a view to deterrence as well as punishment creates the only problem in the case. At the hearing in mitigation and aggravation the State's Attorney stated: "We think that this case is one of the most aggravated as far as this type of crime as has occurred in this area, at least in

my memory, and certainly the circumstance here, as far as the victim goes, is that she was entirely at the will of the defendant, and we think that the court should consider these aggravated circumstances, and that he should impose a penalty here both for the act itself and as a further deterrent for others who might think along the same lines." The question is whether this argument was a breach of the understanding that the State's Attorney "would not recommend either a minimum or maximum sentence, but would leave it up to the Court (Judge)." All of the members of the court are agreed that this argument should not have been made. Since no recommendation as to a specific sentence was made, it is possible to say that the argument did not violate the letter of the State's Attorney's agreement with the public defender. But it can hardly be said that the argument comported fully with the State's Attorney's agreement to leave the sentence up to the judge. On the other hand, the colloquy between the defendant and the trial judge made it clear to the defendant that the sentence to be imposed rested with the trial judge. This latter circumstance has persuaded a majority of the members of the court that the judgment should not be disturbed. While Justices Ward and Burt consider that the spirit of the agreement was violated, they are of the view that remandment is not required and would be unrealistic. Justices Crebs and Schaefer are of the opinion that the sentence should be set aside and the cause remanded to the circuit court of Vermilion County for resentencing.

The judgment is affirmed.

*Judgment affirmed.*