People of the State of Illinois, Plaintiff-Appellee, v. Joe Castillo, Defendant-Appellant.

Gen. No. 53,732.

First District, First Division.

September 21, 1970.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Suzanne M. Kohut, Theodore A. Gottfried, and

388

James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Robert A. Novelle and John A. Gibaitis, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

In a jury trial, defendant was found guilty of armed robbery. He received a sentence of five to fifteen years. On appeal defendant contends (1) that he was deprived of a fair trial and due process of law by an improper identification lineup and prejudicial final argument by the State; also, (2) the sole eyewitness identification was insufficient to prove defendant guilty beyond a reasonable doubt.

Early in the morning of February 13, 1967, at about 5:00 a. m., a cabdriver, Wallace Kupsik, was robbed by three passengers, male Mexicans, after he arrived at an address they had ordered. When the cab stopped, the passenger sitting in the middle of the back seat grabbed and secured the cabdriver by locking his left arm around the driver's neck. Kupsik testified he was facing both the ceiling of the cab and the assailant holding him. The passenger to the left of the one holding the driver moved into the front seat and drove a short distance. The third passenger moved into a position in the far right of the front seat and removed the cabdriver's glasses as they left the cab. During the robbery, until the assailants fled, the cabdriver's head was held in the armlock by the assailant who wielded a beer bottle in his right hand. The assailant was later identified by Kupsik as the instant defendant, Joe Castillo.

Nine days after the robbery, February 22, 1967, the defendant and his two brothers were arrested for disorderly conduct. They were photographed, fingerprinted, and released on bail. The next day, February 23, 1967, they were arrested again. At the station their photographs were among a total of fifteen or twenty viewed by the cabdriver. He positively identified photo-

graphs of the defendant and his brother as two of his assailants.

A lineup composed of defendant, his brother, and two white policemen immediately followed. The policemen were both 5' 10", weighing over 200 pounds. The defendant and his brother were 5' 6"–5' 7" and weighed 110–130 pounds. The cabdriver identified defendant and his brother as two of his assailants. The two arresting officers testified that prior to the lineup, at the time of the arrest, the full constitutional warnings were given the defendant, the defendant stated he understood them, and the defendant never thereafter requested counsel. There was testimony for the defense that later requests for counsel were ignored.

On April 4, 1968, the court denied a pretrial petition of defendant to suppress any in-court identification of any witness the State had intended to call at the trial, because it would have been tainted by an improper lineup identification and related activity, including the illegal use of photographs.

At the trial, which commenced on April 25, 1968, the cabdriver made an in-court identification of the defendant and testified that defendant and his brothers, Jesse and David, robbed him. He further testified as to his identification of the defendant by photograph and at the lineup.

At the trial, and as witnesses for the defense, defendant's brothers, Jesse and David Castillo, who had previously pleaded guilty to the robbery, testified that the third person involved in the robbery was not their brother Joe, but John Garcia. The night preceding the robbery was the first time they had ever met John Garcia. Jesse and David were in front of their house drinking. Between 10:00 and 11:00 p. m., Garcia came up to them and asked them for a drink, and all three of them started drinking. They went to Bessmer Park about 1:00 a. m., and sat on a bench for two or three hours. They then robbed the cabdriver. It was John Garcia who did all the talking with the cabdriver, and it was he who grabbed the cabdriver's neck and held the beer bottle over his head.

David Castillo, on cross-examination, testified that neither he nor his brothers since February 23, 1967, made any attempt to locate John Garcia. Jesse testified that although he had visited Joe about five times since the robbery, they had never discussed it.

Considered first is defendant's contention that his identification was "from a lineup which was patently a nonexigent showup, devoid of counsel's presence," and "denied defendant due process and right to counsel."

Defendant contends that the standards for identification procedures set forth in Stovall v. Denno, 388 US 293 (1967) (the right to a fair lineup), and Gilbert v. California, 388 US 263 (1967) (the right to a lawyer at the lineup), were not met here and resulted "in an ineradicable taint of the identification on which his conviction was grounded." See People v. Blumenshine, 42 Ill2d 508, 250 NE2d 152 (1969).

■ As argued by the State, the rule set forth in Gilbert does not apply here. It applies only to identification procedures conducted in the absence of counsel after June 12, 1967, and the identification lineup in this case took place on February 23, 1967.

■ As to the composition of the lineup, which consisted of two short Mexicans and two or three heavy non-Mexicans, it is obvious that the lineup was fundamentally unfair for the purpose of identification. However, we are not persuaded that the receipt of the evidence of the lineup identification in this case and at the trial tainted the in-court identification by the cabdriver. In People v. Lee, 44 Ill2d 161, 254 NE2d 469 (1969), our Supreme Court stated (p 169):

> "The test is whether the identification procedures were 'unnecessarily' suggestive and the methods used must be examined in light of the circumstances in each case."

As argued by the State, we think the following factors make Kupsik's testimony sufficient identification to support the conviction:

> 1. He had been robbed before and purposely took good note and observation of his passengers.

2. The lights in the cab went on when they entered and the victim was able to observe their faces, and particularly, that of Joe Castillo. The victim looked at them at this time for about 2 minutes.

3. It took 10 to 12 minutes to get to the requested intersection. During this time, traffic was light, dawn was breaking, the street lights were still on. The cabdriver, every few seconds, would look into his rear-view mirror and look at the faces of the three men behind him.

4. When he arrived at the destination, Joe Castillo put an arm around his neck. Distance between his and Joe Castillo's face was but 7–9 inches. His face was right over the victim's.

5. He watched Castillo face to face for the whole drive that lasted some 10 or 15 minutes. He looked right into his face.

6. It was only after the cab finally stopped and he was robbed that his glasses were pulled off. From the initial entry of the defendant into his cab, he had observed him for over 20 minutes at close and very close range.

Although we do consider the lineup procedure here to be unfair, we find no substantial prejudice to the defendant. The totality of the circumstances surrounding the occurrence gave the cabdriver ample opportunity to observe his assailant and provided an adequate independent basis for the in-court identification. (People v. Palmer, 41 Ill2d 571, 244 NE2d 173 (1969); People v. Cook, 113 Ill App2d 231, 238, 252 NE2d 29 (1969).) The identification testimony by the cabdriver was positive and convincing and was unshaken in lengthy cross-examination. We find it was sufficient to support defendant's conviction beyond a reasonable doubt, and it was not tainted by the improper lineup. See People v. Dial, 95 Ill App2d 345, 238 NE2d 122 (1968).

Next considered is defendant's contention that "prejudicial prosecutorial argument deprived the defendant of a fair trial and due process of law." Defendant states

that the prosecutor in closing argument to the jury said, "I feel he (complainant) is a reputable witness, a good witness, a truthful witness, and that he properly identified the person that robbed him on February 13, 1967 and that the brothers who testified are unbelievable, untruthful, incredible."

The State asserts that the entire statement was: "We put on a cabdriver. And I feel he is a reputable witness, a good witness, a truthful witness, and that he properly identified the person that robbed him on February 13, 1967. And that the two brothers, who testified, are unbelievable, untruthful, incredible. But that will be up to you to determine that."

The State further asserts that the foregoing remarks were made "after the State had commented about the preposterous meeting of 'John Garcia' and the two brothers, their immediate comradeship, their gathering at 1:00 a. m., at a snow-covered park in February, the subsequent execution of the robbery, and the immediate disappearance of 'John Garcia.' "

Defendant argues that "for the prosecutor to characterize the defense witnesses as untruthful in the absence of clear evidence of that in the record, of which there is none, is an abuse of his power and breach of his duty." Defendant cites Berger v. United States, 295 US 78, 88–89 (1935), where the United States Supreme Court delineated the role of the prosecutor as that of a servant of the law, whose interest in a case is that "justice shall be done." As such, " 'he may prosecute with earnestness and vigor,' but he shall not strike foul blows." There the court said (p 88) :

> "[I]mproper suggestions, insinuations and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none."

Defendant also cites a number of Illinois cases which held it was prejudicial error for the prosecutor to opinionate in the absence of evidence. People v. Fuerback, 66 Ill App2d 452, 214 NE2d 330 (1966) ; People v. Provo, 409 Ill 63, 97 NE2d 802 (1951) ; People v. Hoffman, 399 Ill 57, 77 NE2d 195 (1948).

■ ■  After examining the entire argument, we believe the remarks complained of were based on evidence in the record and come within the guidelines set forth in People v. Williams, 26 Ill2d 190, 186 NE2d 353 (1962), where it is said (p 194):

> "Taken in context with the entire argument, and measured by the evidence in the record, we cannot agree with defendant that these comments exceeded proper bounds. While it is improper for a State's Attorney to make statements the only effect of which is to inflame the passions or develop the prejudices of the jurors without throwing light on the issues, he may nevertheless draw inferences unfavorable to defendant if based on the evidence, and he may reflect unfavorably on the accused and denounce his wickedness even to the point of invective. Further, it is always proper for the prosecutor to dwell on the evil results of crime and to urge fearless administration of the law."

We find no prejudicial error here.

A review of the totality of the evidence here shows that the defendant received a fair trial, and there was substantial positive identification evidence to support defendant's conviction beyond a reasonable doubt. We conclude the improper evidence heretofore discussed could not have affected the verdict.

For the reasons given, the judgment of the trial court is affirmed.

Affirmed.

BURMAN, P. J. and ADESKO, J., concur.