THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GLENN WILLIAM HULVEY, JR., Defendant-Appellant.

(No. 11679;

Fourth District—February 1, 1972.

Carson D. Klitz, of Rushville, for appellant.

William J. Scott, Attorney General, of Springfield, (Thomas J. Immel and Fred G. Leach, Assistant Attorneys General, of counsel,) and Minton W. Arnold, State's Attorney, of Rushville, for the People.

618

Mr. JUSTICE SMITH delivered the opinion of the court:

This is an appeal from a denial of post-conviction relief after argument but without an evidentiary hearing and reaches us by way of transfer from the Supreme Court. The defendant pleaded guilty to involuntary manslaughter after being fully admonished by the court and was sentenced to the penitentiary for a period of not less than eight nor more than ten years. In his *pro se* petition, he contends (1) that he was arrested without warrant and detained for four days before being taken before any judge; (2) that his plea of guilty was coerced and induced by fear and intimidation; and (3) that the sentence is too severe and should be reduced. Defendant was represented by court-appointed counsel during his trial and by a different one during the post-conviction hearing. The original post-conviction petition contained no affidavits and leave was granted to supply such affidavits on motion of defendant's counsel.

The issue is whether or not the post-conviction petition and affidavits present a substantial showing of a denial of constitutional rights which entitles the defendant to an evidentiary hearing under the Post-Conviction Hearing Act. (Ill. Rev. Stat. 1967, ch. 38, par. 122—1, *et seq.*) The complaint charged that the defendant "acting in a reckless manner, killed Lisa Ann Estes by violent bodily injury to her head and body, without legal justification   *   *   * ". This complaint was signed on October 8 by the wife of the defendant and the mother of the deceased child. Excerpts from the record show that a warrant was issued on this same date and the defendant arrested and brought before the court. Counsel was appointed and bond fixed in the sum of $20,000. On October 7, the medical examiner filed his report in which he stated the immediate cause of death was "(A) Intra-abdominal hemmorrhage   *   *   *   due to (B) Laceration of liver and pancreas   *   *   *   due to (C) Blunt trauma to anterior abdominal wall   *   *   * ". He further stated that there were "numerous contusions and hemotomas, recent and old scattered over body generally, hemotoma of anterior abdominal walls overlying area of liver and pancreas with multiple laceration of capsule of liver, traumatic disruption head of pancreas, intra-abdominal hemorrhage, and anoxic changes in heart, lung, liver, pulmonary edema, cerebral edema". The coroner's report was offered in evidence in the hearing on aggravation and mitigation.

On October 15, the defendant was fully admonished as to all his rights, waived indictment and entered a plea of guilty to involuntary manslaughter. The court asked him: "Now, I will ask defendant if any threats or promises have been made to him to induce him to make a

plea in this cause?" Defendant: "No, there haven't". When asked as to his plea, the defendant said, "Guilty, your Honor". The court then asked: "Again, I will ask defendant if any threats or promises have been made to him to induce him to enter this plea". Defendant replied: "No, there haven't, your Honor". Sentence was then imposed. Defendant was informed of his right to appeal. No appeal was taken. Some eighteen months later, this *pro se* petition for post-conviction was filed. The State filed a motion to dismiss it and the court allowed it without an evidentiary hearing.

The affidavits supporting his petition were filed by his father and mother and were sworn to on the 23rd day of June, 1970. Their affidavits stated that previous to the time that their son pleaded guilty to involuntary manslaughter the father-in-law had displayed an unfriendly and hostile attitude towards the defendant, that they knew that the defendant was fearful that the father-in-law would do him physical harm, that the custodians at the jail had taken steps to keep the father-in-law away from the jail and told the defendant to stay away from the window, and that the father-in-law had told the defendant's father to tell the defendant the best thing he could do was to plead guilty, do his time and not even come back around the Rushville area. This was communicated to the defendant prior to his plea of guilty.

■■ Nothing in the excerpts from the record indicate that the defendant was detained for the four days alleged in his petition. The delay between the death of the little girl and the filing of the complaint is explained in argument in the record that they were awaiting the results of the autopsy as to the cause of death. Assuming without deciding that the detention was unreasonable, the allegations in this complaint standing alone are insufficient to require a hearing for the mere illegal detention in the absence of other coercive circumstances taking place during that period could not possibly have influenced the plea of guilty and does not amount to a denial of due process. *People v. Bernatowicz*, 35 Ill.2d 192, 220 N.E.2d 745.

A somewhat similar set of facts was indicated in *People v. Huff*, 45 Ill.2d 186, 258 N.E.2d 356. It seems strange that neither during his arraignment nor the hearing in aggravation and mitigation did the defendant make a complaint to his attorney or to the court about this fear of his father-in-law which the affidavits of his father and mother state were known to him. He positively denied not once, but twice, any intimidation when interrogated by the court before plea. It seems strange that neither the father, the mother nor the defendant raised any of these issues until some eighteen months after the plea had been accepted and the sentence im-

posed even though they were patently known to all three of them. We observe here, as the court did in *People v. Huff*, 45 Ill.2d 186, 190, 258 N.E.2d 356, 358, where it stated: "In our opinion the defendant's belated contention that his plea was not voluntary was properly denied". In addition, there was no intimidation or threats by court officials nor does his fear now expressed for the first time originate from any such conduct on their part or appear to have induced his plea. *People v. Bowman*, 40 Ill.2d 116, 239 N.E.2d 433; *People v. Brown*, 41 Ill.2d 503, 244 N.E.2d 159.

■■ Lastly the defendant apparently contends that the punishment imposed was cruel and excessive and should be reduced in accordance with the American Bar Association standards. We have frequently stated these are but standards and the type of crime, the defendant, and his background make them a guide rather than a mandate. *People v. Scott*, 106 Ill.App.2d 98, 253 N.E.2d 553.

■■ The coroner's report suggests that the injuries over the body of this little girl were old as well as new. The defendant's testimony that he only shook her and didn't strike her is belied by the coroner's report and the fact that when he saw her gasping for breath he immediately rushed her to the hospital and didn't even stop to change a tire. We cannot say from the nature of this death, notwithstanding the defendant's denial, that his conduct was not reckless nor that the sentence was cruel and excessive. Failure to follow statutory provisions or standards adopted by any bar association for the guidance of the court do not *per se* create substantial constitutional questions. We cannot say that the trial court abused its discretion in imposing this sentence. The judgment of the trial court is affirmed.

Judgment affirmed.

TRAPP, P. J., and SIMKINS, J., concur.