THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HERBERT CATLETT, Defendant-Appellant.

(No. 58499;

First District (5th Division)—June 7, 1974.

James J. Doherty, Public Defender, of Chicago (Shelvin Singer, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Kenneth L. Gillis and Linda West Conley, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE BARRETT delivered the opinion of the court:

This appeal arises from a bench trial judgment in which defendant-appellant was convicted for armed robbery and sentenced to the Illinois State Penitentiary for a period of not less than 7 and not more than 7 years and 1 day. We affirm the judgment of the trial court.

The appeal raises four issues: (1) Whether pre-trial identification procedures were unduly suggestive; (2) Whether the failure to specifically name the dangerous weapon used to perpetrate the alleged crime rendered the indictment fatally defective; (3) Whether the sentence imposed was improper and contrary to the principles of indeterminate sentencing; (4) Whether defendant was proven guilty beyond a reasonable doubt.

On the evening of October 27, 1971, Giulio Piunti and Jeffrey Denis Means were working at Romano's Liquors in Chicago. Piunti was the manager of the store and Means was his assistant.

At approximately 9 P.M. two black males entered the store. One of these men was the defendant. The two men were soon joined by another black male. Piunti testified that his attention was drawn to the three men because they were "congregating from one section of the store to another." It was also brought out in testimony that the entire store was lighted by various 8-foot fluorescent lights which were in operation that night.

After defendant and his two companions had been in the store for approximately 10 minutes, defendant approached the check-out counter with a bottle of wine. As Piunti stated the amount of the purchase, he looked up and saw defendant pointing a revolver at him. Means, who was standing at the back of the store, observed defendant pointing a revolver at Piunti. Following defendant's orders, Piunti placed the money from the cash register into a bag.

Means related substantially the same story as Piunti, adding that once he observed defendant pointing a revolver at Piunti, he was confronted by one of defendant's companions. This individual told Means to lie down on the floor and raise his hands. Once Means was on the floor, one of the men took his wallet. While defendant was still at the cash register with Piunti, Means was ordered to get up and walk toward the front of the store.

At this time, defendant brought Piunti toward the rear of the store. Both Piunti and Means were ordered to lie down on the floor. Defendant and his companions then left the liquor store.

After the robbery, the police were called. Later that same evening,

Piunti and Means were taken to the police station. After looking through 150 to 200 photographs, both men made tentative identifications of defendant as one of the robbers. Piunti then turned over the picture he had identified and observed the name "HERBERT CATLETT" on the back of the picture.

On October 28, 1971, Piunti and Means went to the police station to view a suspect held in police custody. Neither man could identify the suspect as one of the robbers.

On October 29 or 30, 1971, more pictures were shown to Means and Piunti. Defendant's photograph was not in this group. At this time no identifications were made.

One week after the robbery, on November 3, 1971, Piunti and Means were called down to the police station to view another suspect. As the two men descended the stairs to the police station they saw defendant inside. Means and Piunti nodded to each other as they recognized defendant as one of the robbers. The two men then entered the room where defendant was sitting. When defendant left the room a few moments later to make a telephone call, Piunti asked one of the police officers, "Who is that man and where is he going?" The officer said, "That's Herbert Catlett." Piunti then responded, "Well, he's the one who held me up."

At the time of the identification, defendant was at the Chicago Heights Police Station in the custody of the Illinois State Police.

During the course of his trial, defendant took the stand in his own defense. He stated that he was in Romano's Liquor Store between 7:30 P.M. and 8 P.M. on October 27, 1971. At that time he allegedly made some purchases and left the store. He then went to his brother's house nearby where he remained the rest of the night.

OPINION

Defendant contends that the in-court identifications of the witnesses were improperly admitted and constituted a denial of due process because they were the product of an unduly suggestive pre-trial confrontation. In support of his argument, defendant cites *Stovall v. Denno,* 388 U.S. 293, 18 L.Ed.2d 1199, 87 S.Ct. 1967; *People v. Blumenshine,* 42 Ill.2d 508; *Simmons v. United States,* 390 U.S. 377, 19 L.Ed.2d 1247, 88 S.Ct. 967; *People v. Fox,* 48 Ill.2d 239; *United States v. Wade,* 388 U.S. 218, 18 L.Ed.2d 1149, 87 S.Ct. 1926; and *Gilbert v. California,* 388 U.S. 263, 18 L.Ed.2d 1178, 87 S.Ct. 1951. The State argues that the pre-trial identification of defendant at the police station was coincidental and not the product of a show-up as proscribed by such decisions. In *People v. Pardue* (1972), 6 Ill.App.3d 430, it was recently held that an inadvertent out-of-court confrontation leading to the identification of the accused need not

in and of itself mandate the suppression of the out-of-court identification. An accidental confrontation does not vitiate the out-of-court identification, especially "where the identification was immediate, spontaneous, unprompted and positive." See 6 Ill.App.3d 430 at 432, *supra*.

■■ In the case at bar, the identification following the accidental confrontation was immediate, spontaneous, unprompted and positive. Furthermore, there is nothing in the record to indicate that the confrontation was anything but accidental. At the time of the confrontation defendant was in the custody of the State Police for violation of a traffic law. There is no evidence whatsoever that the identification of defendant in the police station constituted a staged show-up. Each witness based his positive in-court identification upon his actual view of the defendant at the scene of the robbery. At that time, the opportunity to observe was excellent, including the lighting and the length of time defendant was in close proximity to the witnesses. We find that the in-court identification of the defendant was reliably predicated upon observations independent of any pre-trial confrontation and that the trial court properly admitted such evidence.

■■ Defendant next argues that the indictment was defective in that it described the weapon as a dangerous weapon, without specifically naming it. It is a well established rule of law that an indictment framed in the words of the statute defining the offense is sufficient to inform the defendant of the nature of the charge against his. (*People v. Mikota* (1971), 1 Ill.App.3d 114.) Framed in the language of sections 18—1 and 18—2 of the Criminal Code (Ill. Rev. Stat. 1973, ch. 38, pars. 18—1, 18—2), the indictment sufficiently charged every element of the offense of armed robbery.

Next it is argued that the sentence imposed was improper and contrary to the principles of indeterminate sentencing. Defendant was sentenced to a minimum of 7 years to a maximum of 7 years and a day. Because there is no appreciable "spread" between the minimum and the maximum sentence, defendant alleges error.

■■ The most convincing fact militating against defendant's argument is that he requested the sentence imposed upon him. In addition, armed robbery is a Class 1 felony in Illinois. (Ill. Rev. Stat. 1973, ch. 38, par. 18—2). For a Class 1 felony, any indeterminate sentence in excess of 4 years is appropriate. (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1). Clearly the sentence of 7 years to 7 years and 1 day falls within the prescribed limits of the statute.

■■ Defendant also contends that the trial court erred in not following the American Bar Association recommendations for indeterminate sen-

tencing. The American Bar Association advocates a one-to-three ratio between minimum and maximum sentences. Although the recommendations have been adopted by the State of Illinois (Illinois Unified Code of Corrections, ch. 38, arts. 1003—3, 1003—8, 1003—9, 1003—10, 1003—11, 1003—13), they are to be considered as a guide and not as a mandatory requirement for imposition of a proper sentence. *People v. Hulvey* (1972), 3 Ill.App.3d 617.

Because the sentence falls within the limits imposed by statute and was expressly requested by defendant it should not be disturbed.

Defendant also presents a number of points which, when considered together, he believes show that he was not proved guilty beyond a reasonable doubt.

■■ We cannot agree. The robbery occurred in a well-lighted liquor store. The robbers made no attempt to conceal their identity so that they were observed by the witnesses for almost a half hour. The conditions on which witnesses based identification of defendant were optimal. Considering all of defendant's argument as a whole, we find no reason to interfere with the trial court's finding of guilty. It is our opinion that defendant was afforded a fair trial and was convicted of the crime of armed robbery beyond a reasonable doubt.

For the reasons stated above, the judgment of the trial court is affirmed.

Judgment affirmed.

DRUCKER and LORENZ, JJ., concur.