THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JOHN SANTIAGO, Defendant-Appellant.

First District (5th Division)    No. 76-1040

Opinion filed October 7, 1977.

Robert P. Sheridan, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Mary Ellen Dienes, and John J. Cronin, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

After a bench trial, defendant was convicted of armed robbery and sentenced to four to eight years. From this judgment, he appeals[1] and presents the following issues for review: (1) whether Supreme Court Rule 413 (Ill. Rev. Stat. 1973, ch. 110A, par. 413) extends the sixth amendment exclusionary rule announced by *United States v. Wade* (1967), 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926, and *Gilbert v. California* (1967), 388 U.S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951, to lineups conducted prior to the commencement of adversary judicial proceedings; and (2) whether the lineup was so unnecessarily suggestive and conducive of irreparable misidentification that he was denied due process of law.

On March 15, 1974, at 8:55 a.m., while on burglary surveillance in the area of 31st Street and Union Avenue, Chicago police officers Krakausky and Geides observed a turquoise 1964 Chevrolet bearing the license number LA 5784 pull up and park. A man whom they later identified as Daniel Relich exited this automobile and entered a nearby building at 3038 South Union. Within two to three minutes, a black-over-green 1967 Chevrolet with license number 976 979 drove up, and the driver (whom the officers later identified as defendant) entered the same building. At approximately 9:10 a.m., Relich and defendant emerged from the building and entered their respective vehicles. The officers followed them for a few blocks and, when the two cars went in separate directions, they returned to their surveillance positions.

At 9:30 a.m. that day, Barbara Cuba arrived in the alley behind the tavern which she and her husband owned and which was located at 3423 South Racine, five or six blocks from 31st and Union. She had just withdrawn a large sum of money to be used in cashing the payroll checks of patrons, and her purse contained $2,600 in $10 bills, $100 in rolled quarters, and a wallet containing approximately $70. Parking her vehicle, she noticed a turquoise Chevrolet with two male occupants pull up behind her and block the entrance to the alley. The driver emerged, wearing a clear plastic welder's mask over his eyes and carrying a gun. He demanded her purse and, when she determined he was not joking, she handed her purse to him. The gunman then returned to his car, and she turned around to observe the other occupant of the car through the open door. She remained in the alley until she had memorized the license number of the vehicle, which she memorialized on a paper plate as soon

---

[1] Codefendant, Daniel Relich, with whom defendant was tried and who was also found guilty of robbery, takes no part in this appeal.

as she entered the tavern. The plate was admitted into evidence and bore the number LA 5784. The police were called and, upon their arrival, she described the gunman (whom she later identified as defendant) as being in his early twenties, 5'6" or 5'7" tall, weighing 140 pounds, dark complexion, black hair, and wearing an army jacket with blue or grey pants. On cross-examination, she testified that she was quite sure that he was Mexican.

At 9:40 a.m. that same morning, Officers Krakausky and Geides heard a simulcast on their police radio which was a want for two armed robbery suspects. One was described as a male, white or Mexican, 22 to 23 years of age, 5'6" or 5'7" tall, 140 pounds, dark complected, and wearing a green army fatigue jacket; the other was described as a male, white or Mexican, 22 to 23 years old, dark complected, and wearing a dark jacket. Additionally, the suspects were reported as last seen driving a 1964 Chevrolet bearing license number LA 5784.

At 9:55 a.m., the 1967 Chevrolet bearing license number 976 979 returned to the 3038 South Union address with two men in the car. As this was the same car both officers had seen earlier in connection with the vehicle having license number LA 5784, Krakausky and Geides approached it, announced their office, and ordered the two men out of the car. When the car started to move, Krakausky pulled the driver (whom he later identified as defendant) from the vehicle, searched him, and recovered a gun from his pocket. The other occupant, identified as Relich, was searched and $2,600 in $10 bills, $100 in rolled quarters, and a lady's wallet containing identification documents bearing the name of Cuba and $79 were found in his possession. Defendant and Relich were then arrested, and the turquoise Chevrolet was later found in a supermarket parking lot two blocks from the scene of their arrest.

Meanwhile, Ms. Cuba was being interviewed by other policemen in front of her tavern when a call emanating from a portable police radio announced the capture of the suspects involved in robbing her. She was then taken to the police station, where she was shown and identified as her own the money, wallet, and identification documents taken from Relich. Thereafter, when she viewed a lineup consisting of defendant, Relich, four policemen, and another individual, she identified defendant as the gunman and Relich as the companion who had remained in the car.

At trial, defendant moved to suppress the lineup as suggestive and the in-court identification as tainted. The motion, consolidated with the State's case in chief, was denied.

OPINION

■■ Defendant first contends that his lineup was conducted in violation of his right to due process in that it was held without affording him the opportunity to have counsel present. While agreeing that

application of the sixth amendment exclusionary rule announced in *Wade* and *Gilbert*, which remedies the denial of the right to counsel, is not mandated by the United States Constitution where lineups are held prior to the initiation of adversary judicial proceedings (*Kirby v. Illinois* (1972), 406 U.S. 682, 32 L. Ed. 2d 411, 92 S. Ct. 1877; *People v. Palmer* (1969), 41 Ill. 2d 571, 244 N.E.2d 173), he argues that the Illinois Supreme Court by its enactment of Supreme Court Rule 413 (Ill. Rev. Stat. 1973, ch. 110A, par. 413), intended to extend the right to counsel to lineups occurring prior to the commencement of such proceedings. No authority is advanced by defendant in support of his position other than the citation of Rule 413 itself. The State, however, contends that an extension of *Kirby* is not the intended application of Rule 413. That rule provides in pertinent part:

> "Disclosure to Prosecution
> (a) The person of the accused. Notwithstanding the initiation of judicial proceedings, and subject to constitutional limitations, a judicial officer may require the accused, among other things, to:
> (i) appear in a line-up;
> \* \* \*
>
> (b) Whenever the personal appearance of the accused is required for the foregoing purposes, reasonable notice of the time and place of such appearance shall be given by the State to the accused and his counsel, who shall have the right to be present. Provision may be made for appearances for such purposes in an order admitting the accused to bail or providing for his release."
> (Ill. Rev. Stat. 1973, ch. 110A, par. 413.)

It appears to us that this rule by its own terms refers to lineups conducted after the commencement of adversary judicial proceedings. This belief is buttressed by Rule 411, which provides that discovery rules such as Rule 413 are "applicable following indictment or information and shall not be operative prior to or in the course of any preliminary hearing." (Ill. Rev. Stat. 1973, ch. 110A, par. 411: see also Ill. Ann. Stat., ch. 110A, par. 411, Historical and Practice Notes, at 675 (Smith-Hurd 1976).) Moreover, the Committee Comments which annotate Rule 413 state that its application was intended to comport with the rule announced in *Gilbert* (Ill. Ann. Stat., ch. 110A, par. 413, Committee Comments, at 700 (Smith-Hurd 1976).) We also note that subsequent to the effective date of Rule 413, in *People v. Burbank* (1972), 53 Ill. 2d 261, 272, 291 N.E.2d 161, 167, *cert. denied* (1973), 412 U.S. 951, 37 L. Ed. 2d 1004, 93 S. Ct. 3017, the rule in *Palmer*[2] was "modified and broadened to apply the *Wade* and *Gilbert*

---

[2] In *Palmer*, which followed *Gilbert*, it was held that the requirements of *Wade* and *Gilbert* do not apply to a pre-indictment lineup.

rule to not only post-indictment lineups but to lineups conducted after the initiation of adversary judicial criminal proceedings against an accused by whatever means." *Burbank,* quoting *Kirby,* defined the initiation of adversary criminal proceedings as " 'formal charge, preliminary hearing, indictment, information, or arraignment.' " (53 Ill. 2d 261, 272, 291 N.E.2d 161, 167.) Therefore, we hold that Rule 413, which is operative only after indictment or information, is more narrow than either *Kirby* or *Burbank* and, as any lineup ordered under subsection (a) necessarily occurs after the initiation of adversary judicial proceedings (Ill. Rev. Stat. 1973, ch. 110A, par. 411), the notice to defense counsel as provided for in subsection (b) is not required before such proceedings.

Here, defendant does not nor could he contend that his lineup occurred after the commencement of adversary judicial proceedings, as the lineup was held prior to the time he was charged with the commission of an offense. Therefore, the right to counsel had not attached prior to his lineup.

Defendant next contends that the lineup was unnecessarily suggestive and conducive to irreparable mistaken identification. His position is that certain factors; *i.e.,* his being the only Mexican in a white lineup, the positioning of his hands which indicate that he may have been handcuffed, the wearing of platform shoes only by him and Relich, and the notice to the witness to expect to see the perpetrators in that lineup caused a substantial likelihood of mistaken identification. We disagree.

■■ ■ An accused's lineup may not be "so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law." (*Stovall v. Denno* (1967), 388 U.S. 293, 302, 18 L. Ed. 2d 1199, 1206, 87 S. Ct. 1967, 1972.) "When a person has not been formally charged with a criminal offense, Stovall strikes the appropriate constitutional balance between the right of a suspect to be protected from prejudicial procedures and the interest of society in the prompt and purposeful investigation of an unsolved crime." (*Kirby v. Illinois* (1972), 406 U.S. 682, 691, 32 L. Ed. 2d 411, 418-19, 92 S. Ct. 1877, 1883.) Defendant, however, bears the burden of establishing that the confrontation resulted in a denial of due process. (*People v. Johnson* (1970), 45 Ill. 2d (1970), 45 Ill. 2d 38, 257 N.E.2d 3; *People v. McMath* 33, 256 N.E.2d 835, *cert. denied* (1970), 400 U.S. 846, 27 L. Ed. 2d 83, 91 S. Ct. 92.) In order to meet this burden, the totality of circumstances must not only show suggestive conditions (*People v. Lee* (1969), 44 Ill. 2d 161, 254 N.E.2d 469 (defendant shown handcuffed to one previously identified as a perpetrator); *People v. Blumenshine* (1969), 42 Ill. 2d 508, 250 N.E.2d 152 (defendant shown alone to witnesses to the crime after the police had announced that they had captured the suspect); *People v. Allender* (1975), 33 Ill. App. 3d 843, 342 N.E.2d 284 (one photo showup where witness was

specifically requested to view this photo based upon defendant's mere association or friendship with a previously identified perpetrator); *People v. Fultz* (1975), 32 Ill. App. 3d 317, 336 N.E.2d 288 (defendant observed while handcuffed and being escorted by police); *People v. Castillo* (1970), 130 Ill. App. 2d 387, 264 N.E.2d 516 (where defendant's complexion and/or coloring were significantly different than that of other lineup participants, and this difference formed a distinguishing facet of the witness' description of the perpetrator).) In addition, the circumstances must show a substantial likelihood of misidentification which is dependent upon an evaluation of the following criteria: "[T]he opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." (*Neil v. Biggers* (1972), 409 U.S. 188, 199, 34 L. Ed. 2d 401, 411, 93 S. Ct. 375, 382.) Where an evaluation of this criteria shows that the witness had an independent source for his in-court identification, such evidence is admissible notwithstanding the existence of some suggestiveness in the lineup procedure. *Neil v. Biggers; People v. Black* (1972), 52 Ill. 2d 544, 288 N.E.2d 376, *cert. denied* (1973), 411 U.S. 967, 36 L. Ed. 2d 689, 93 S. Ct. 2155; *Johnson; Castillo.*

Defendant argues, however, that impermissible suggestion resulted when Ms. Cuba was put on notice overhearing the announcement that the suspected perpetrators were in custody, and also because prior to viewing the lineup she was allowed to identify the property taken from her by the perpetrators. Initially, it can be noted that *People v. Townsend* (1977), 47 Ill. App. 3d 789, 365 N.E.2d 110 is similar in many respects to the instant case. There, five young men took money and a television set during the course of a robbery. Within a short span of time and distance, two young men were seen running while carrying a television set. They were arrested, handcuffed, and returned in a police car to the scene of the robbery, where the victim first identified his television set and then identified the two men in custody as members of the group which had robbed him. After reviewing the record and considering all the relevant factors, the *Townsend* court held that this identification procedure was not unduly suggestive.

Here, Ms. Cuba heard of defendant's arrest within 30 minutes of the robbery. Moments later, she identified her property without being notified of the identity of the person or persons from whom it was recovered. Subsequently, she identified defendant upon viewing a lineup rather than an individual showup. Reviewing the composition of defendant's lineup from the black and white photos in the record, we can find no distinct difference between his appearance and that of others in

the lineup. While, as he contends, defendant may have been the only participant who was actually of Mexican descent, at least four other men in the array could, in our opinion, be described as Mexican or Latin in ethnic origin. Moreover, all but one were of the same height, with dark hair and complexions, and the record not only shows nothing distinctive about defendant's footwear but also, in the series of lineup photographs showing different poses, it appears that several participants had their hands clasped behind their backs. In addition, we have observed no trace of manacles and, indeed, defendant does not contend that he was actually handcuffed. Quite obviously, the police investigatory and identification procedures involved in the instant case are far less suggestive than those employed in *Townsend*.

■■ Furthermore, any witness who is called to view a lineup must be aware that the police have included what they believe to be a suspect in the array, as to assume otherwise would be to believe that the police are requesting a futile act of them. Therefore, it is difficult to see how the overheard police broadcast announcing the capture of suspects had any suggestive effect not present in all lineups. Also, while Ms. Cuba's identification of her recently stolen property indicates that the perpetrator is probably a lineup participant, we note that the persons from whom it was recovered were not made known to Ms. Cuba, and we cannot say that mistaken identification of defendant was a very substantial likelihood of such suggestion. Thus, we do not believe that the identification procedure was impermissibly suggestive.

■■ However, even assuming that it was impermissibly suggestive, the *Neil v. Biggers* test must be considered to ascertain whether the in-court identification had an independent source. Here, Ms. Cuba viewed the gunman from a short distance and on a face-to-face basis during the occurrence which encompassed "a couple of minutes" in broad daylight. Her attention was certainly acute, as she had the presence of mind to observe and memorize the license number of the vehicle. She gave a detailed description which defendant does not allege to have been inaccurate, and it appears that her identification of defendant from the seven man lineup which took place within a short time after the robbery was made without hesitation. Moreover, she testified that the police did not in any fashion indicate to her which participant[s] they suspected had been her assailant. These factors show an independent source for her in-court identification, and the trial court did not err in admitting her identification of defendant. *Neil v. Biggers; People v. Camel* (1974), 59 Ill. 2d 422, 322 N.E.2d 36; *People v. Spence* (1976), 43 Ill. App. 3d 1044, 357 N.E.2d 1245; *People v. McKinley* (1976), 42 Ill. App. 3d 48, 355 N.E.2d 324.

For the reasons stated, the judgment of the circuit court is affirmed.

Affirmed.

LORENZ and MEJDA, JJ., concur.