THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* PAUL MINGO (Impleaded), Defendant-Appellant.

First District (5th Division)   No. 79-1075

Opinion filed September 26, 1980.

Ralph Ruebner and Barbara Kamm, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Joel A. Eisen-Stein, and Lawrence T. Krulewich, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

After a bench trial, defendant was convicted of robbery and sentenced to four years probation. On appeal, he contends that his motion to suppress the identification was erroneously denied and that his guilt was not proved beyond a reasonable doubt.

From the testimony of Michael Hartman, Kenny James, and Theotis Bridges, it appears that they and Steve Ray had left a restaurant and were about to enter Hartman's car when a Plymouth automobile in which three persons were riding stopped next to them; that the driver of the Plymouth said he had a gun and told the four men to turn over all their money; that the person sitting in the back seat of the Plymouth said, "You hear him. He's got a gun. Give it up"; that Hartman then gave the driver $60 and Bridges gave him $40; and that Ray and James gave money to the passenger in the back seat. During the robbery, Ray managed to slip away and inform nearby police officers of the robbery and, upon their approach, the Plymouth drove away at a fast rate of speed; that the officers gave chase and defendant was apprehended shortly afterwards.

At trial, Hartman, James and Bridges each identified defendant as the driver of the Plymouth involved in the robbery.

It appears that after the robbery the victims were in a conference room at the police station when three men in handcuffs (including defendant) slowly walked by the open door, and Hartman testified that at this point he said, "That's them"; and that he recognized the three men as the persons he had seen in the Plymouth earlier that day. Bridges also testified that shortly after he and the other victims arrived at the police station, the officers informed them that the robbers had been caught and that while the victims were talking to police officers, "someone" in the group said, "Those are the three guys" when the handcuffed suspects walked by; and that he recognized defendant and another suspect as two of the men involved in the robbery. James testified that it was a police officer who remarked, as the three men walked past the conference room door, that they were the participants in the robbery; but, in any event, he recognized them as the persons who had robbed him and his companions. It further appears that this confrontation took place no more than an hour after the robbery, and while they were still in the conference room an officer identified each of the suspects by name.

Officer Bradley testified for the State that on the day of the robbery he and his partner pursued the Plymouth after it left the scene of the robbery; that the driver wore a black shirt with a floral print; that another police car driven by Officer Posilovich and his partner joined the chase; that after the Plymouth proceeded a short distance, it left the pavement and its occupants fled on foot; and that he and his partner eventually apprehended one of its passengers. Officer Posilovich testified that he and his partner were in pursuit of the Plymouth and, when the occupants exited and started to run, he chased the driver (whom he later identified as defendant) while his partner followed in the squad car; that during the chase, he lost sight of defendant for "approximately a second"; and that he eventually caught and placed him under arrest but found no money or weapons in his possession.

Defendant and Howard Anderson (a codefendant) testified that they were on their way home from a party when they were chased by the police and arrested, but that they had no part in the robbery. Defendant also testified that he was wearing a gray shirt when arrested. At trial, the court denied a motion to suppress the identifications of the defendant.

OPINION

Initially, defendant contends that the trial court erred in denying a defense motion for suppression of identification because (a) a suggestive pretrial procedure tainted an in-court identification; and (b) the State did not establish an independent basis for the in-court identification.

■■ The determination as to whether a pretrial confrontation in a specific instance is "so unnecessarily suggestive and conducive to irreparable mistaken identification that [the accused] was denied due process * * * depends on the totality of the circumstances surrounding it * * *'" (*Stovall v. Denno* (1967), 388 U.S. 293, 302, 18 L. Ed. 2d 1199, 1206, 87 S. Ct. 1967, 1972), and defendant bears the burden of proving that such a confrontation resulted in a denial of due process (*People v. McMath* (1970), 45 Ill. 2d 33, 256 N.E.2d 835, *cert. denied* (1970), 400 U.S. 846, 27 L. Ed. 2d 83, 91 S. Ct. 92; *People v. Madden* (1977), 52 Ill. App. 3d 951, 368 N.E.2d 384). In order to fulfill this burden, the totality of the circumstances must not only demonstrate suggestiveness (*Stovall v. Denno*; *People v. Lee* (1969), 44 Ill. 2d 161, 254 N.E.2d 469) but also show a substantial likelihood of misidentification (*Neil v. Biggers* (1972), 409 U.S. 188, 34 L. Ed. 2d 401, 93 S. Ct. 375; *People v. Santiago* (1977), 53 Ill. App. 3d 964, 369 N.E.2d 125).

Defendant, in essence, maintains that impermissible suggestion resulted when an officer at the police station informed the victims that the robbers had been apprehended and shortly thereafter the three handcuffed robbery suspects (including defendant) were escorted by the police past the door of the room in which the complaining witnesses were being interviewed. We disagree. It appears to us that the situation here closely parallels that presented in *People v. Fultz* (1975), 32 Ill. App. 3d 317, 339-40, 336 N.E.2d 288, 306-07, wherein it was stated:

> "The thrust of the contention is that, when Ritche identified defendant and Lorraine Hayden in the police station, they had their hands handcuffed behind their backs and they were being escorted by police officers. But, in order for the contention to have any substance, the police must be found to have arranged these 'suggestive' circumstances for the edification of Michael Ritche at the time they had also arranged for him to view defendant and Lorraine Hayden in the police station. It is obvious that the police had made no such arrangements and, indeed, had made no arrangements whatsoever. The encounter was a chance encounter which the police not only did not arrange but could not reasonably have foreseen so as to prevent it. Moreover, Ritche's identification of defendant to a police officer immediately after the encounter was spontaneous. * * * Owing to the absence of any indication that the police arranged either the encounter itself or the 'suggestive' circumstances, we find that defendant's contention has no merit." See also *People v. Braxton* (1980), 81 Ill. App. 3d 808, 401 N.E.2d 1062; *People v. Catlett* (1974), 20 Ill. App. 3d 832, 314 N.E.2d 346; *People v. Pardue* (1972), 6 Ill. App. 3d 430, 286 N.E.2d 29.

Here, as in *Fultz*, defendant makes no showing that the confrontation was prearranged by the police; indeed, in his brief defendant characterizes the situation as "unnecessary" and "careless" but does not claim it was staged. Further, the record discloses that upon seeing the suspects, Hartman immediately stated, "That's them." This positive identification was spontaneous and, although another victim (James) testified that it was a police officer rather than Hartman who identified the suspects as the robbers, this conflict merely presents a question of the credibility of the witnesses.

■ Defendant argues also that the suggestiveness of the encounter was heightened by the fact that the police told the victims the names of the men in custody and matched them to the suspects' descriptions. However, this information could not have influenced the identification as it was not made known to the complaining witnesses until after they had recognized the suspects as the robbers. Considering the totality of the circumstances here, we believe that the identification was not unduly suggestive.

■■ ■ Moreover, evidence of an unnecessarily suggestive identification may, in any event, be admissible at trial if it is reliable (*Manson v. Brathwaite* (1977), 432 U.S. 98, 97 S. Ct. 2243, 53 L. Ed. 2d 140; *People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937), which is dependent upon evaluation of the following factors:

> "[T]he opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." (*Neil v. Biggers*, 409 U.S. 188, 199-200, 34 L. Ed. 2d 401, 411, 93 S. Ct. 375, 382; see also *People v. McKinley* (1977), 69 Ill. 2d 145, 370 N.E.2d 1040, *cert. denied* (1978), 435 U.S. 975.)

Concerning the first of these factors, defendant argues that the witnesses had little opportunity to view him because they did not have a face-to-face confrontation since their heads were above the roof of the Plymouth. However, we view the record as disclosing that the witnesses had a good opportunity to do so. It was the testimony of the complaining witnesses that the area was well-illuminated by the street and restaurant lights; that defendant was in their presence for 5 to 10 minutes; that defendant spoke to both Hartman and Bridges from a distance of 1 to 2 feet, and James viewed him at the first part of the robbery from a short distance. Additionally, it should be noted that even though the heads of the witnesses may have been above the roof of the Plymouth, their field of vision allowed them to look down—thereby permitting them to view defendant's face. In regard to the second factor, the record indicates that

the attention of the victims was directed to defendant during the incident, as demonstrated by their testimony that defendant was the driver of the Plymouth; that he initially stated that he had a gun and demanded their money; that two of the witnesses gave their money to him; and that he told the other two victims to come around the car with their money or he would blow their heads off. While the attention of the victims was not continuous, it appears clear that their attention was focused on defendant at least to the extent that they heard and complied with his demands. As to the third factor, we see that no descriptions were given by the complaining witnesses and apparently none were requested by the police. With respect to the fourth factor, we note that defendant admits in his brief that the witnesses "were all very certain" of their identification, but he argues that they saw defendant in custody and were told his name and that "they discussed the matter among themselves and probably reached a concensus about these men." It appears, however, that the witnesses saw defendant in the police station within an hour after the robbery and that, immediately upon viewing them, Hartman made the statement "That's them" with no indication of any discussion concerning defendant between the time he was seen and the statement of Hartman. It is thus indicated that there was a high level of certainty demonstrated at the confrontation. Regarding the fifth factor, as we have stated above, the confrontation in the police station occurred within an hour after the robbery. Thus, our evaluation of the *Neil v. Biggers* indicia demonstrates that the pretrial confrontation was reliable.

In view of our holding that the police station confrontation was not unduly suggestive and that, in any event, the pretrial identification was reliable, we need not consider whether the in-court identification was proper, because "any identification in the 'wake' of a reliable out-of-court identification is admissible." (*Manion*, 67 Ill. 2d 564, 572, 367 N.E.2d 1313, 1317, citing *Manson v. Brathwaite* (1977), 432 U.S. 98, 110 n. 10, 53 L. Ed. 2d 140, 151 n. 10, 97 S. Ct. 2243, 2251 n. 10.) We nonetheless believe, from the evidence as set forth above, that an independent origin for the in-court identification of defendant was clearly established. See *People v. Allender* (1977), 69 Ill. 2d 38, 370 N.E.2d 509.

Defendant also contends that his guilt was not proved beyond a reasonable doubt, because the only evidence connecting him to the crimes was "unreliable identifications." A reviewing court will not disturb the determination of guilt by the finder of fact unless the evidence is so improbable or unsatisfactory as to leave a reasonable doubt of guilt. (*Manion*; *People v. Smith* (1979), 69 Ill. App. 3d 704, 388 N.E.2d 184.) Furthermore, the positive and credible testimony of a single occurrence witness is sufficient to support a conviction (*People v. Jones* (1975), 60 Ill.

2d 300, 325 N.E.2d 601; *People v. Stringer* (1972), 52 Ill. 2d 564, 289 N.E.2d 631) notwithstanding contrary testimony of defendant (*People v. Sullivan* (1970), 46 Ill. 2d 399, 263 N.E.2d 38).

■ We concluded above that the identifications of defendant by the victims were reliable. Defendant posits, however, that he was mistakenly arrested because he happened to be in the area where the robbers fled. In support, he first points to the fact that he had no money in his possession when apprehended; however, this merits little consideration, as it appears obvious that he could have disposed of the money during the chase or perhaps given it to one of the other passengers in the car. Neither do we attach any importance to the fact that Officer Bradley testified that the driver of the car was wearing a black shirt with a bright floral print, whereas defendant stated and a House of Corrections clothing ticket indicated that he was wearing a gray shirt when arrested. Such conflict presented only a question of fact for resolution by the trier of fact. It is significant that the complaining witnesses testified that a Plymouth driven by defendant pulled up alongside the car which the victims were entering; that defendant informed them that he had a gun and demanded their money—which they gave to defendant and the passengers in the Plymouth; and that, upon the arrival of the police, defendant and his cohorts drove quickly from the scene. Important also was the testimony of Officer Posilovich that he and his partner pursued the Plymouth; that he chased defendant on foot upon his exit from the car; and that he lost sight of him for only "approximately a second" before apprehending him. It would thus appear that the testimony of these witnesses establishes that defendant was a participant in the robbery, and we conclude that his guilt was established beyond a reasonable doubt.

For the reasons stated, the judgment is affirmed.

Affirmed.

LORENZ and MEJDA, JJ., concur.