THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RAYFORD LEE PARDUE, Defendant-Appellant.

(No. 54999;

First District—June 30, 1972.

Gerald W. Getty, Public Defender, of Chicago, (Shelvin Singer and James J. Doherty, Assistant Public Defenders, and Rozanne Mulack, Senior Law Student, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Elmer C. Kissane and Stephen R. Kramer, Assistant State's Attorneys, of counsel,) for the People.

Mr. PRESIDING JUSTICE LORENZ delivered the opinion of the court:

Defendant was charged with rape, indecent liberties with a child, contributing to the sexual delinquency of a child and aggravated kidnapping. He was tried by the court sitting without a jury, found guilty of all four offenses and sentenced to a three to ten year term for each offense. On appeal he contends: (1) that a motion to suppress identification testimony should have been sustained; (2) that he was not proven guilty beyond a reasonable doubt; and (3) that the court improperly sentenced him on all four counts.

The testimony presented by the State is as follows. At dusk on the evening of July 21, 1966, Tandalier Bell, who was twelve years old, walked to a skating rink with her girl friend. She left the rink alone and met a friend who walked with her to a location approximately one block from her home. As Tandalier continued to walk home, a man whom she identified as defendant approached her. He wore glasses and a checkered shirt and she had never seen him before. Although it was dark, the light from a nearby yard allowed her to see defendant's face. He stuck something in her back and pushed her into his car, a blue and white Bel Aire, telling her not to scream. She entered the front seat of the vehicle on the passenger's side. As defendant opened the door to get into the driver's seat, the witness saw his face in the light created by the interior light of the car. Defendant told Tandalier to put her head on the car seat, she complied and kept her head so placed until they arrived at a pond where she was told to remove her clothing. At first she refused, but after defendant threatened her, she removed her skirt and undergarments. He unzipped his pants and ordered her into the back seat where, against her will, an act of sexual intercourse was performed. They dressed and defendant drove Tandalier, who was then sitting up in the passenger seat, to the area from which he had taken her. She ran home and told her mother what had happened. They went to a filling station where either the police were called or just happened to come upon the scene. Tanda-

lier and her mother were taken to a hospital where a physical examination revealed a "busted" hymen and the presence of blood on the victim's thighs. Also, slides made during the examination revealed the presence of spermatozoa. From the hospital they went to the police station where Tandalier gave a written statement. About 20 minutes after Tandalier and her mother arrived at the police station, defendant, wearing glasses and a checkered shirt was brought by the police through the door of the station on the way to a back room. He had been arrested while he was driving a blue and white Chevrolet. Without anything said by the police, Tandalier exclaimed, "That's the man." The police then questioned her regarding the man's identity. On the day of the rape Tandalier was "coming off" her period, but wore no sanitary napkin.

The testimony presented on behalf of the defense indicates that at approximately 4:45 P.M. on July 21, 1966, defendant borrowed a friend's Chevrolet and picked up a girl friend. They had a few drinks and rode around. He returned to her house at 7:30 P.M. and they talked until 8:00 P.M. when he left. He stopped for another drink and went to his brother's apartment where he remained with his brother until 11:30 P.M. when he left to go home. He was arrested and taken to the police station. At the time he arrived at the station the girl was not there, but approximately one hour later she came in and "they" said "that's the man." Defendant's penis and clothing were examined for blood but none was found. At the time of his arrest defendant wore a white shirt and glasses. The fact that defendant wore a white shirt on the night of his arrest was corroborated by the testimony of both his brother and sister. He denied all involvement with the crime.

■■ Defendant first contends that the motion to suppress the identification testimony should have been sustained. The question of a coincidental confrontation between a defendant and a victim of a crime was considered in *People v. Wright* (1970), 124 Ill.App.2d 223, 230-231, 260 N.E.2d 265, 269. There also, the out-of-court confrontation was inadvertent. The court in effect held the coincidental confrontation in and of itself should not lead to suppression of the out-of-court identification. That conclusion is especially appropriate in the instant case where the identification was immediate, spontaneous, unprompted and positive.

■■ Notwithstanding the question of the admissibility of the identification of defendant at the police station, an independent origin, arising from an earlier uninfluenced observation of the defendant, was established by clear and convincing evidence. Thus, the in-court identification testimony was clearly admissible. (*See People v. Cook* (1969), 113 Ill. App.2d 231, 236, 252 N.E.2d 29, 32.) This independent origin arises out of the opportunity of the victim to observe defendant under good lighting

conditions where he stopped her and as he entered the car. Additionally, the victim had ample time to view defendant as they prepared to have intercourse and as he returned her to the area of her house.

■■ In urging that his guilt was not established beyond a reasonable doubt defendant advances numerous grounds such as: the limited intelligence and immaturity of the victim of the rape; the alleged unclear and unconvincing character of the identification of him; her limited opportunity to observe defendant before, during and after the rape; the lack of corroboration of the victim's testimony; and the unimpeached testimony of alibi witnesses. It is unnecessary for each point to be considered individually as whether they are considered separately or as a whole they relate to the credibility of the various witnesses. The trier of fact makes the determination of the witnesses' credibility and as we find that the evidence is not so unsatisfactory as to create a reasonable doubt of defendant's guilt that determination will not be disturbed. *People v. Holt* (1970), 124 Ill.App.2d 198, 201, 260 N.E.2d 291, 293.

■■ Lastly, defendant contends that he was improperly found guilty and sentenced on all four counts. There are two aspects of defendant's contention in this regard. First, he correctly urges that he was improperly sentenced for rape and the lesser included sex offenses. Because the same facts are the basis of all three sex offenses in the instant case the lesser convictions are reversed. (*People v. Baker* (1969), 114 Ill.App.2d 450, 453-457, 252 N.E.2d 693, 695-697.) Second, defendant contends that the court also improperly sentenced him for both rape and aggravated kidnapping. He alleges that the conduct which underlies each of these offenses also arose out of the same transaction. Further, defendant contends that a kidnapping is inherent in every rape. These contentions were discussed and found to be without merit in the recent case *People v. Canale*, 52 Ill.2d 107, a case with facts very similar to the case at bar.

The judgment of the Circuit Court on the charges of rape and aggravated kidnapping is affirmed. The judgment is reversed insofar as it relates to the sentencing of defendant for the offenses of contributing to the sexual delinquency of a child and indecent liberties with a child.

Affirmed in part; reversed in part.

DRUCKER and ENGLISH, JJ., concur.