(Nos. 43822, 43905-06 cons.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. ROBERT FRANK RUSSO, Appellant.

*Opinion filed October 2, 1972.*

UNDERWOOD, C.J. and RYAN, J., dissenting.

HENZI, VOGEL & MULHERIN, of Glen Ellyn, for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and ROBERT J. BIER, State's Attorney, of Quincy (JAMES B. ZAGEL, Assistant Attorney General and MATTHEW A. HUTMACHER, Assistant State's Attorney, of counsel), for appellee.

MR. JUSTICE SCHAEFER delivered the opinion of the court:

On June 3, 1968, Robert Frank Russo, the defendant, entered pleas of guilty in the circuit court of Adams County to charges of voluntary manslaughter, aggravated battery and attempted escape. On June 13, 1968, he pleaded guilty to a charge of armed robbery, and a hearing in aggravation and mitigation on all charges was held on that date. At the conclusion of that hearing the defendant

was sentenced to a term of not less than 17 nor more than 20 years for voluntary manslaughter, and not less than two nor more than ten years for aggravated battery, this sentence to be served consecutively to the manslaughter sentence. He was also sentenced to not less than four nor more than five years for attempted escape, and not less than seven nor more than ten years for armed robbery. The two latter sentences were to be served concurrently with the manslaughter sentence. The defendant appealed from the manslaughter judgment, the appellate court, affirmed (119 Ill.App.2d 237), and leave to appeal was denied. Petitions for post-conviction relief were denied after a full hearing, and the defendant has appealed.

The defendant was arrested on December 11, 1967, and charged with the murder of Frank Burton on December 10, 1967, and with an armed robbery committed on December 9, 1967. He was confined in the Adams County jail and he and another prisoner attempted to escape from that jail on March 10, 1968. In the course of the attempt he clubbed a jailer with an iron mop handle, and as a result the jailer required eleven stitches in his head. Other deputies who came to the rescue subdued the defendant. They were injured, but less severely. The defendant was then placed in a cell by himself until he was taken to the State penitentiary after he had been sentenced.

The defendant contends that the conditions under which he was confined after his attempted escape were such as to be psychologically coercive. Specifically, he contends that his "*** 'will' was overborne and he plead guilty to all charges against him, except the murder charge to which he plead guilty to voluntary manslaughter, in order to be released from the hole." He says: "It must be remembered that Russo remained in the 'hole' for 3 months—approximately 90 days—and during this 3 months, he was denied, at least for some period, the right to visits, to write letters, to receive letters, smoking

material, religious services, the use of a Bible, the right to a tooth brush and tooth paste, and he lost his entire upper teeth and most of the bottom ones as a result of this action."

The evidence received at the lengthy hearing on the post-conviction petition presents a different picture. The "hole" referred to by the defendant is a well-lit, standard-sized 8x10-foot cell, part of a complex of such cells where prisoners who present disciplinary problems are kept. Prisoners in those cells can carry on conversations with each other. For the first two months after his attempt to escape, the prisoner was apparently allowed to visit only with his wife and attorney, and during that period was not allowed to smoke. However, during the month immediately prior to his plea of guilty he also was visited by his mother and his smoking privileges had been restored. The sheriff testified that he was refused reading and writing material for security reasons, but denied that he was refused visitation by a minister except for a brief period immediately after the attempted escape. The jailer testified that the defendant was allowed to brush his teeth often, and upon request he was given medical attention, including one visit to a physician for foot treatment. No evidence was presented at the hearing, beyond the defendant's unsupported testimony, that he suffered any dental disorder, or, if he did, that it was caused by his treatment in the Adams County jail. The defendant's contention that his pleas were the result of psychological coercion is without merit.

The defendant also contends that before accepting his pleas of guilty the court should have ordered a competency hearing. He had no prior history of mental disturbance, and at no time has he suggested that he was not competent to stand trial. His contention that a hearing should nevertheless have been conducted is based upon the fact that the trial court authorized psychiatric examinations of the defendant. The result of the examinations

were not introduced into the record, but the defendant now argues that "the court, by approving the examinations, itself impliedly indicated that it had 'reason to believe the defendant was incompetent.' " But the authorization of a psychiatric examination is not enough to establish that the court felt a *bona fide* doubt as to a defendant's competence to stand trial *(People v. Franklin (1971), 48 Ill.2d 254, 256),* and there is no basis for defendant's claim that the failure of his appointed counsel to request a hearing amounted to incompetent representation.

The defendant's claim that certain property was illegally seized at the time of his arrest in Missouri is without merit in view of his plea of guilty *(People v. McKirdie (1970), 45 Ill.2d 300),* and his further claim that his plea of guilty was obtained through fear that the illegally seized evidence would be used against him if he stood trial has no support in the evidence.

The defendant's next contention is that he did not plead guilty to voluntary manslaughter. He asserts that he was confused, and wished to plead not guilty, but that he was misunderstood by the court. There is no support for this contention in the record. On June 3, 1968, defendant's attorneys, in the defendant's presence, sought leave to withdraw the plea of not guilty previously entered to the charge of murder, and to enter a plea of guilty to voluntary manslaughter. The following exchange then took place:

> "The Court: Your Attorney has just indicated to the Court that you want to withdraw your plea of not guilty and enter a plea of guilty to this charge. Is that correct?
>
> Mr. Russo: No, sir.
>
> The Court: It is not correct?
>
> Mr. Russo: I wish to plead to voluntary manslaughter.
>
> The Court: To voluntary manslaughter?

Mr. Russo: Yes.

The Court: Let me ask you again. Your attorney has indicated to the court that you wish to withdraw your plea of not guilty to the charge contained in the indictment and enter a plea of guilty to the charge of voluntary manslaughter. Is that correct?

Mr. Russo: Yes."

The defendant next argues that his constitutional rights were violated "when he was not admonished as to the consequences of his pleas of guilty." His contention is that the court erred in not explicitly warning him that consecutive sentences could be imposed. The contention is without merit, for the defendant himself testified that he was advised by his attorneys of the sentences that the prosecution would recommend. Those were the sentences imposed, slightly modified in the defendant's favor.

Numerous other claims are advanced by the defendant, but they were either disposed of by the appellate court (119 Ill.App.2d 237) or do not raise constitutional issues.

Finally, the defendant asserts that the imposition of concurrent sentences for the offenses of attempted escape and aggravated battery was erroneous. We are of the opinion that this contention must be sustained. *People v. Whittington (1970), 46 Ill.2d 405,* involved an escape from the penitentiary and the theft of an automobile in which to get away. *People v. Lerch (1972), 52 Ill.2d 78,* involved an attempted escape and an aggravated battery committed in order to effect the escape. In both instances the court held that concurrent sentences should not have been imposed and therefore set aside the conviction on the charge for which the statute fixed the less severe penalty. In this case, therefore, the sentence imposed for the offense of attempted escape must be set aside.

For the reasons stated, the judgments of the circuit court of Adams County entered upon the defendant's pleas of guilty to voluntary manslaughter, aggravated

battery and armed robbery are affirmed. The sentence imposed for attempted escape is reversed, and cause No. 43905 is remanded to the circuit court of Adams County with directions to vacate that sentence.

*Affirmed in part and reversed in part
and remanded, with directions.*

MR. CHIEF JUSTICE UNDERWOOD, dissenting:

My disagreement with the court's holding respecting the concurrent sentence imposed for escape has been stated with sufficient frequency (*People v. Lerch, 52 Ill.2d 78; People v. Whittington, 46 Ill.2d 405*), and I would not dissent again here for that reason alone.

I am moved to do so for the reason that the court vacates this sentence in the context of a post-conviction proceeding. This action, in my opinion, is clearly beyond the scope of the post-conviction statute (Ill.Rev.Stat. 1967, ch. 38, par. 122—1 *et seq.*) which embraces only "a substantial denial of [petitioner's] rights under the constitution of the United States or of the State of Illinois." The court's opinion does not suggest that the imposition of a concurrent sentence for escape is prohibited by either constitution. No other opinion of this court says it is. The Supreme Court of the United States has held *consecutive* sentences for different offenses arising from the same act are not constitutionally proscribed (*Gore v. United States, 357 U.S. 386, 2 L.Ed.2d 1405, 78 S.Ct. 1280*), so that concurrent sentences for different offenses regarding different *acts*, as here, are obviously permissible from the viewpoint of the constitution.

Nor are *Whittington* and *People v. Lerch* (52 Ill.2d 78) authority for the court's action. The constitutional issue was neither raised nor discussed in *Whittington. Lerch* involved an appeal from the conviction itself, and is completely inapposite on this issue.

I would affirm the conviction and sentence.

MR. JUSTICE RYAN joins in this dissent.