THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MICHAEL MEREDITH, Defendant-Appellant.

Fourth District   No. 12796

Opinion filed May 6, 1976.

TRAPP, P. J., dissenting.

Richard J. Wilson and John L. Swartz, both of State Appellate Defender's Office, of Springfield, for appellant.

C. Joseph Cavanagh, State's Attorney, of Springfield (G. Michael Prall and Robert Perry, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

After a jury trial, defendant Michael Meredith was found guilty of rape, armed robbery, and aggravated kidnapping in violation of sections 11—1, 18—2, and 10—2, respectively, of the Criminal Code (Ill. Rev. Stat. 1973, ch. 38, pars. 11—1, 18—2, and 10—2) and was sentenced to concurrent sentences of 7 to 21 years for each offense. Defendant appeals.

At trial, the complainant testified that she attended high school in Springfield on October 29, 1973. After lunch, she began to walk home at 12:25 p.m. As she walked along Cornell Avenue, she noticed someone walking behind her. She slowed down for the man to pass, but instead he caught up to her, put a pocket knife at her side, and told her to do as he ordered. The man told her to walk south along the railroad tracks which intersected Cornell Avenue. She screamed and made two attempts to escape, but was unable to do so. The man forced her along the tracks and took her about a block and a half into a wooded area. He walked less than 6 inches from complainant, during which time she observed his face. Once they were in the woods, the man, with the knife still in his hand, asked her if she had any money. She had 40 cents which she gave to him. He asked her if she had ever been raped. She answered, "No." The man told her to take her clothes off, but she refused and tried unsuccessfully to escape. He sat on her chest and pinned her on the ground with his knees on her elbows. She tried to kick him off, but was unsuccessful. He then pulled her jeans and underclothing down to her ankles, removed his own pants, and had intercourse with her. During this time, the assailant continued to hold the knife in his hand. When complainant screamed, he hit her in the face. Complainant estimated that during the act of intercourse, his face was 2 inches away from her face. After they had

put their clothes on, they walked back along the tracks. She again made an unsuccessful attempt to escape. Finally, he told her to go back to school and not tell anyone of the incident or he would kill her. After being with this man for about 15 minutes, complainant arrived back at school about 5 minutes to 1 p.m. Three students who saw complainant return to school testified that she was muddy, upset, and crying.

The police were notified. Complainant showed the police where the incident occurred, and gave an initial description of her assailant. Defendant was arrested that afternoon. Complainant went with her parents to the Springfield police station at about 4 p.m. There she described her assailant as a white male, approximately 17 years of age, 5 feet 6 to 8 inches tall, approximately 135 pounds, with blondish-red hair coming down to his shoulders, a light complexion, and freckles. She also stated that he was wearing dark brown pants, black shoes, no hat, and a jacket with some white on it. After giving a written statement, complainant was shown a group of eight or more photographs which included a photograph of defendant. She identified defendant as the assailant. The pictures were returned to the file without any record being kept of the identity of the other persons whose photographs had been submitted to her. Complainant then viewed a lineup which included the defendant. The lineup consisted of five persons, the other four participants being police officers. Complainant picked out defendant as her assailant. At the trial, complainant again identified defendant as the assailant.

On appeal, defendant first urges that the trial court erred in admitting evidence of the photographic identification. Defendant supports his position with three arguments: (1) The identification procedure was improperly conducted and suggestive, (2) no record was kept of the photographs employed, and (3) the photographic identification was unnecessary because defendant was already in custody. Defendant further contends that the subsequent lineup and in-court identifications were tainted by the improper photographic identification procedure. Last, defendant contends that he was improperly convicted and sentenced for three offenses which arose out of a single transaction.

■■ At trial, defendant objected to the admission of evidence of the photographic identification on the ground that the failure of the police to preserve the photographs impeded defense counsel in cross-examination. Defendant did not raise the issue of suggestiveness either at trial or in the post-trial motion. Defendant's failure to object in the trial court to the suggestiveness of the photographic identification procedure would, of itself, preclude consideration of that issue on review. (*People v. Rodgers*, 53 Ill. 2d 207, 290 N.E.2d 251.) Aside from defendant's failure to object, however, our consideration of the record leads us to conclude that

defendant's contention should not be sustained. Photographic identification must be scrutinized according to the standards established in *Simmons v. United States,* 390 U.S. 377, 382-385, 19 L. Ed. 2d 1247, 88 S. Ct. 967. As the Illinois Supreme Court stated in *People v. Holiday,* 47 Ill. 2d 300, 265 N.E.2d 634:

> "We must attempt to determine from the trial record whether the photo identification procedures were improper, and, if so, what consequences should follow upon admission of the identification testimony at trial. The totality of the circumstances surrounding the photographic identifications must be scrutinized according to the standards set forth in *Simmons,* where the court held 'that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" 47 Ill. 2d 300, 307-308, 265 N.E.2d 634, 637-638.

■■ The burden is on defendant to establish that the identification procedure was so suggestive as to give rise to a very substantial likelihood of irreparable misidentification. (*People v. Johnson,* 45 Ill. 2d 38, 257 N.E.2d 3.) We recognize that in a situation in which no record is made of the photographs used in the photographic identification, it is difficult to prove suggestiveness. The failure to retain such records is contrary to good police and prosecutorial procedures. The absence of the photographs, however, is not by itself cause to reverse the conviction. *People v. Brown,* 52 Ill. 2d 94, 285 N.E.2d 1; *People v. Jackson,* 12 Ill. App. 3d 789, 299 N.E.2d 142.

Photographic identification procedures should not be employed when a defendant is in custody. (*Holiday.*) Defendant failed to object to the introduction of the testimony of the photographic identification on this basis. Apart from that procedural deficiency, however, defendant's custodial status is not the standard by which we must determine the propriety of the photographic identification. (*People v. Jackson,* 54 Ill. 2d 143, 295 N.E.2d 462.) The test remains, considering the totality of the circumstances, whether the identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. *People v. Williams,* 60 Ill. 2d 1, 322 N.E.2d 819.

■■ Complainant arrived at the police station at about 4 p.m. Although upset, she was not hysterical and was given time at the police station to calm and collect herself before giving a written statement or viewing the photographs. Complainant testified that she looked through a group of eight or more photographs from which she selected defendant's

picture without hesitation. While not recalling exactly what the other photographs looked like, defendant's photograph was "outstanding" in her mind as she viewed the photographs. She further testified that no one singled out any one picture to her. The police detective who had administered the photographic identification proceedings testified that he selected pictures which fit the description complainant supplied as closely as possible, and that the other photographs were similar to defendant's. He stated that no one did anything to emphasize any one particular photograph. The record demonstrates that nothing improper or suggestive occurred during the photographic identification procedure. Moreover, both complainant and the police detective were cross-examined regarding the photographic identification. We conclude that under these circumstances the photographic identification procedure was not suggestive.

■■ Were we to assume that the photographic identification procedure was impermissibly suggestive, defendant's contention still must fail for the reason that we must look to the totality of the circumstances to determine whether the identification was reliable. Prior to viewing the photographs, complainant gave an extremely detailed description of her assailant's features, which accurately fit defendant. During the commission of the offenses, complainant had the opportunity to view defendant for a period of about 15 minutes under good lighting conditions. Complainant observed defendant's face as they walked. In view of complainant's ample opportunity to closely observe defendant at the time of the attack, plus the detailed description she provided prior to viewing the photographs, we do not believe that the subsequent identification procedures were so suggestive as to give rise to a substantial likelihood of irreparable misidentification.

Defendant contends that the subsequent lineup and in-court identifications were tainted by improper photographic identification procedures and unsupported by any origin independent of the photographic identification. We note that counsel failed to object to testimony regarding either of these issues. That failure, of itself, would preclude consideration of these issues on appeal. (*People v. Harris*, 33 Ill. 2d 389, 211 N.E.2d 693.) We need not base our decision upon that procedural deficiency, however, because our determination that the photographic identification procedure was not impermissibly suggestive likewise disposes of these contentions. Moreover, in-court identification of a defendant is proper if it is based on origin independent of a tainted identification procedure. (*People v. Blumenshine*, 42 Ill. 2d 508, 250 N.E.2d 152.) The record is clear and convincing that the in-court identification by complainant was the product of her encounter with

defendant rather than the result of the photographic identification procedure. Such testimony was properly admitted.

Defendant contends that the convictions and sentences for aggravated kidnapping and armed robbery should be reversed because they arose out of a single course of conduct which began when complainant was accosted and concluded when she was raped. Defendant's contention raises the troublesome issue of what test is applicable to determine whether defendant's convictions arose from a single course of conduct. The test is sometimes formulated in terms of whether the charged offenses "are clearly distinct and require different elements of proof" (*People v. Johnson*, 44 Ill. 2d 463, 475, 256 N.E.2d 343), and at other times in terms of conduct which is "independently motivated or otherwise separable." (*People v. Whittington*, 46 Ill. 2d 405, 410, 265 N.E.2d 679.) (See *People v. Bell*, 30 Ill. App. 3d 449, 450, 332 N.E.2d 619, 620.) We agree with the Fifth District's observation that the "numerous cases on the subject cannot be reconciled with logic and consistency." *People v. Sifers*, 29 Ill. App. 3d 428, 431, 331 N.E.2d 589, 591. *Cf. People v. Binkley*, 25 Ill. App. 3d 27, 322 N.E.2d 514; *People v. Coultas*, 30 Ill. App. 3d 81, 332 N.E.2d 169. Compare *People v. Whiteaker*, 30 Ill. App. 3d 848, 334 N.E.2d 200, with *People v. Sims*, 20 Ill. App. 3d 1068, 313 N.E.2d 663.

The most recent supreme court discussion of this issue is found in *Williams*. In *Williams*, the defendant was found guilty of murder, armed robbery, and burglary. The court concluded that because defendant entered with intent to commit a robbery, two offenses—burglary and armed robbery—arose out of the same conduct. Only the conviction for the more serious offense was permitted to stand. The court stated:

> "Beginning with *People v. Schlenger* (1958), 13 Ill. 2d 63, this court has decided a series of cases culminating in holdings that a person may not be convicted of multiple offenses arising out of the same act or the same conduct and that only the judgment and sentence for the most serious of the offenses may stand. (See also *People v. Duszkewycz* (1963), 27 Ill. 2d 257; *People v. Stewart* (1970), 45 Ill. 2d 310; *People v. Whittington* (1970), 46 Ill. 2d 405; *People v. Lerch* (1972), 52 Ill. 2d 78; *People v. Prim* (1972), 53 Ill. 2d 62; *People v. Cox* (1972), 53 Ill. 2d 101; *People v. Lilly* (1974), 56 Ill. 2d 493; *People v. Scott* (1974), 57 Ill. 2d 353.) Defendant contends that these cases are applicable to his multiple convictions and that only the conviction of murder, the most serious of the offenses, may stand. We find instead that these decisions affect only the convictions of burglary and armed robbery. The two men entered the Calderone home for the purpose of robbing the Calderones. Thus, although burglary and armed robbery involve different elements of proof and the men commited a series of acts,

their unauthorized entry with the intent to commit theft and the actual theft by means of armed robbery constitute two offenses arising from the same conduct involved in robbing the Calderones. Only the conviction of the most serious of the two offenses, armed robbery, can stand, and the judgment and sentence on the burglary conviction must be reversed.

These cases do not, however, prohibit separate convictions and sentences for armed robbery and murder, even though the activity constituting both offenses was a series of very closely related acts. The purpose of the entry was robbery, not murder, and that objective changed to murder only when the robbers were confronted by Mr. Calderone with a gun in his hand. Then, they chose to commit a separate act for the purpose of killing Mr. Calderone. That shooting can be viewed as a means of removing an obstacle to their original objective of robbery, but it is also evident that at least part of their reason for killing was to avoid injury or apprehension by Mr. Calderone." 60 Ill. 2d 1, 13-14, 322 N.E.2d 819, 826.

■■■ We find *Williams* controlling. Whether defendant's convictions and sentences for aggravated kidnapping and armed robbery should be vacated depends on whether the objective, purpose, or motivation of defendant remained unchanged throughout his course of conduct. (*People v. Gibson*, 30 Ill. App. 3d 555, 560, 333 N.E.2d 549.) In the instant case, the rape and armed robbery were clearly two independently motivated and separable events. The kidnapping was motivated by and committed in order to achieve defendant's objective of perpetrating the rape. Under these circumstances, the conviction for the charge for which the statute imposes the less severe penalty must be set aside in accordance with *Williams*. (See *Sims*.) While the armed robbery appears from the record to be independent of the kidnapping, that issue need not be resolved for present purposes because armed robbery and rape are treated alike for purposes of sentencing. Rape, armed robbery, and aggravated kidnapping are all Class 1 felonies for which an offender may not be sentenced to death. (Ill. Rev. Stat. 1973, ch. 38, pars. 11—1(c), 18—2(b), 10—2(b)(2).) The maximum and minimum term of imprisonment for each is the same. (Ill. Rev. Stat. 1973, ch. 38, pars. 1005—8—1(b)(2), 1005—8—1(c)(2).) Section 5—5—3 of the Unified Code of Corrections provides in pertinent part:

"(d) When a defendant is convicted of a felony or misdemeanor, the court may sentence such defendant to:

(1) a period of probation, a term of periodic imprisonment or conditional discharge except in cases of murder, *rape, armed robbery,* violation of Sections 401(a), 402(a), 405(a) or 407 of the

Illinois Controlled Substances Act or violation of Section 9 of the Cannabis Control Act;" (Emphasis added.) (Ill. Rev. Stat. 1973, ch. 38, par. 1005—5—3.)

We conclude this reflects a legislative determination that the penalty for rape or armed robbery is more severe than the penalty for aggravated kidnapping. (See *Sims*.) The sentence and conviction for aggravated kidnapping are therefore set aside.

The State cites *People v. Canale*, 52 Ill. 2d 107, 285 N.E.2d 133, in support of its contention that separate convictions for rape and aggravated kidnapping are proper in the instant case. In *Canale*, the defendant was convicted of aggravated kidnapping, deviate sexual assault, and rape. He was sentenced on the aggravated kidnapping and rape charges. The defendant had abducted his victim by entering her automobile and forcing her at gunpoint to drive some distance from her home. He confined her in the car for a period of 45 minutes during which he forced her to perform oral, anal, and vaginal intercourse. The supreme court held that the evidence supported defendant's conviction for aggravated kidnapping. The defendant, while raising the issue that a conviction for kidnapping incidental to a rape should not be allowed to stand, did not argue his contention in terms of an independently motivated course of conduct; nor did the supreme court reach its decision based upon such issue. In light of the recent analysis by the supreme court in *Williams*, we conclude that the proper course is to follow the analysis of *Williams* rather than the result of *Canale*. *Cf. People v. Pardue*, 6 Ill. App. 3d 430, 286 N.E.2d 29.

Defendant's convictions and sentences for armed robbery and rape are affirmed. The conviction and sentence for aggravated kidnapping is reversed and the cause is remanded to the circuit court with directions to issue an amended *mittimus*.

Affirmed in part, reversed in part and remanded with directions.

GREEN, J., concurs.

Mr. PRESIDING JUSTICE TRAPP, dissenting:

In *People v. Canale*, 52 Ill. 2d 107, 285 N.E.2d 133, the Supreme Court expressly rejected the contention that a conviction for aggravated kidnapping must be reversed because the confinement and asportation in kidnapping was incidental to the rape thereafter committed. The court held that the evidence of confinement and asportation supported the conviction for aggravated kidnapping, and a concurrent sentence for such offense was sustained.

*Canale* has been followed in *People v. Pardue*, 6 Ill. App. 3d 430, 286

N.E.2d 29; *People v. Whiteaker*, 30 Ill. App. 3d 848, 334 N.E.2d 200; *People v. Brown*, 31 Ill. App. 3d 547, 334 N.E.2d 323 and *People v. Elliott*, 32 Ill. App. 3d 654, 336 N.E.2d 146. In each case concurrent sentences were sustained.

In its opinion in *People v. Sims*, 20 Ill. App. 3d 1068, 313 N.E.2d 663, this court did not refer to the holding in *Canale*. *Sims* relied upon *People v. Whittington*, 46 Ill. 2d 405, 265 N.E.2d 679, *People v. Lerch*, 52 Ill. 2d 78, 284 N.E.2d 293, and *People v. Russo*, 52 Ill. 2d 425, 288 N.E.2d 412. Those cases concerned convictions for escape which were incidental to the principal offense. *Canale* did not consider such opinions.

The principal opinion relies upon language in *People v. Williams*, 60 Ill. 2d 1, 322 N.E.2d 819, to conclude that the holding in *Canale* should be modified. That opinion determined that burglary and armed robbery constituted the same conduct and for such reason the burglary should be reversed. The court distinguished offenses which include "very closely related acts" for which there may be separate convictions and sentences. Citing *People v. Johnson*, 44 Ill. 2d 463, 256 N.E.2d 343, and *People v. Harper*, 50 Ill. 2d 296, 278 N.E.2d 771, the court reiterated that the test of propriety in separate convictions and sentences was whether or not the offenses were clearly distinct and required separate elements of proof.

In *Williams*, the court did find that the murder was a "change in the nature of the criminal objective" for purposes of considering the statutory provision which bars consecutive sentences for different offenses which are a part of a "single course of conduct".[1] The court continued, however, to state its conclusion that the murder was a "departure from a 'single course of conduct' ." It therefore does not seem to be precise to conclude that the language with regard to a change in criminal objective modifies the rule of *Canale* with regard to closely related acts which include elements of separate offenses.

In such context, it cannot be said that the rape involved the same conduct and elements as the aggravated kidnapping, and I do not believe that this court should depart from the rule of *Canale* to reverse the conviction and sentence for aggravated battery.

---

[1] Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—4(a).