THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHN R. OLSON, Defendant-Appellant.

Fourth District No. 14202

Opinion filed June 9, 1978.

536

H. Carl Runge, of Runge & Gumbel, P. C., of Collinsville, for appellant.

C. Joseph Cavanagh, State's Attorney, of Springfield (Robert C. Perry and Gary J. Anderson, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE GREEN delivered the opinion of the court:
Following a jury trial in the circuit court of Sangamon County, defendant John R. Olson was convicted of the murder of James Erickson. Defendant appeals his conviction and sentence of 14 to 45 years' imprisonment.

The following evidence presented at trial was undisputed. Defendant had been a close friend of Juliann McGlynn, the victim's ex-wife, for several years. On Saturday, May 15, 1976, he drove from his home in East St. Louis to Mrs. McGlynn's apartment in Springfield. They stayed overnight at the Holiday Inn and returned to her apartment on Sunday afternoon, May 16. They had been drinking beer and Canadian Club during the day and continued to drink and eat sandwiches until about 8 or 9 that evening when defendant left. Mrs. McGlynn shared the apartment with the victim (her ex-husband) and her 14-year-old son. The victim was not present when the defendant arrived on Saturday but she called him from the motel to tell him she was spending the evening with the defendant.

After the defendant left on Sunday evening, the victim arrived at the apartment and he and Mrs. McGlynn began to argue. The telephone rang and Mrs. McGlynn spoke on the phone. After the phone call, the victim and Mrs. McGlynn were still arguing when defendant returned to the apartment with a gun. The defendant and the victim began to argue and defendant told him, "I better not ever hear of you beating her." Defendant struck the victim with the gun on the side of the head about three times and "clicked" the gun in the victim's face a number of times, threatening to "blow" his "head off." The victim put out his hand, touched the defendant's hand holding the gun, and the gun discharged, hitting the victim in the face. He died about noon the following day in a Springfield hospital.

Defendant's contention that the evidence failed to prove beyond a reasonable doubt that the victim died of the wounds from the gunshot is without merit. When the victim was brought to the hospital, his pulse was minimal. The neurosurgeon who examined him testified that the bullet

had damaged a major portion of his brain and that he then exhibited many signs of death. The doctor's decision to withdraw life support measures was reasonable. In any event, negligent care by doctors attending the victim would not have relieved defendant from criminal responsibility for murder. *People v. Stamps* (1972), 8 Ill. App. 3d 896, 291 N.E.2d 274.

■■ ■ Defendant maintains that the jury could not have determined beyond a reasonable doubt that his mental state was more severely criminal than that of recklessness because the evidence strongly indicates that prior to the shooting, he told the victim, "You are damned lucky to get out of here alive." In order to prove the required mental state for murder, the State was required to prove either that the defendant intended to kill or do great bodily harm to the victim or committed acts which he knew created a strong probability of death or great bodily harm (Ill. Rev. Stat. 1975, ch. 38, par. 9—1(a)). Evidence of defendant's earlier statements that he would "kill the s.o.b." and that he would "blow" his "head off" were evidence of malice and an intent to kill (*People v. Slaughter* (1963), 29 Ill. 2d 384, 194 N.E.2d 193). Furthermore, the evidence that the shooting was more than accidental was very strong. Although all of the State's occurrence witnesses said that the victim reached for the gun and touched defendant's hand before the shot, they also all stated that the victim's hand had returned to his side before the shot was fired. Even the defendant admitted that the victim's hand did not hit the hammer or trigger on the gun. The evidence of mental state was also sufficient.

■■ Defendant complains that the trial court should have held a hearing on his fitness to stand trial. Section 5—2—1(c) of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—2—1(c)) requires the court to hold such a hearing when "a bona fide doubt" on the point "is raised." Here, defendant did not request a fitness hearing but did make a motion for psychiatric evaluation. The court's order granting the motion did not of itself raise a bona fide doubt. (*People v. Russo* (1972), 52 Ill. 2d 425, 288 N.E.2d 412; *People v. Franklin* (1971), 48 Ill. 2d 254, 269 N.E.2d 479.) The appointed psychiatrist interviewed the defendant and reported to the court that defendant was intelligent and had capacity to defend himself. At the hearing on the post-trial motion, defense counsel filed an affidavit stating that defendant had a history of psychiatric treatment and at the age of six accidentally shot and killed a playmate. This information did not negate the psychiatrist's report. No fitness hearing was required.

Defendant next contends that the trial court should have granted a new trial on the basis of newly discovered evidence. The alleged new evidence was a sworn statement by Mrs. McGlynn recanting portions of her trial testimony and explaining that her testimony was affected by

medication she was taking and because she felt pressured by the prosecutor to recall events she could not remember.

In order to justify a new trial, newly discovered evidence must,

"(1) appear to be of such a conclusive character that it will probably change the result if a new trial is granted, (2) have been discovered since the trial, (3) be such as could not have been discovered before the trial by the exercise of due diligence, (4) be material to the issue, and (5) not merely cumulative of the evidence offered on the trial." *People v. Jones* (1975), 26 Ill. App. 3d 78, 82, 325 N.E.2d 56, 59.

■■ The alleged newly discovered evidence does not meet those criteria. Mrs. McGlynn's new testimony would be a recant of her prior testimony and would be subject to impeachment by her prior testimony. Furthermore, it would be cumulative to the testimony given by defendant and not of such a conclusive character as to likely change the result.

Defendant also argues that the prosecutor coerced or prodded Mrs. McGlynn into giving improper evidence. In her affidavit, Mrs. McGlynn stated that she felt pressured because the assistant State's attorneys were trying to make her remember things she could not recall and they were angry with her because she could not remember. However, she also stated that before trial, the prosecutor just told her to "Go up and tell the truth." The prosecutor explained that she did become angry because Mrs. McGlynn would not listen to the questions being asked and would give nonresponsive answers. The prosecutor also denied being told that Mrs. McGlynn was ill, upset, taking medication or under a nervous strain. The court stated that based on the testimony at the hearing, the prosecutor's statement and its observation of Mrs. McGlynn as a witness, it could find no evidence of prosecutorial misconduct. That finding is not contrary to the manifest weight of the evidence.

■■ Defendant also contends that the trial court erred in ruling on a number of procedural and evidentiary matters. During voir dire, defense counsel objected to the court's excusal of one juror and moved for a mistrial, stating that the court on its own motion seemed to excuse women with children of tender years and that this might result in a primarily male venire. The court denied the motion, explaining that it was excusing women who were unable to make arrangements for the care of their children because their attention would be divided between the trial and concern for the children. The court's action was not unreasonable. Furthermore, no authority has been called to our attention for the proposition that dismissal of a single juror is grounds for a mistrial.

■■■ Defendant also moved for a mistrial on the grounds that (1) he was prejudiced because spectators were searched before entering the

courtroom and (2) he was uncuffed in the hallway in the presence of jurors and the cuffs were clicked loudly. The policy of searching spectators was not instituted just for this trial but was done in all serious felony cases in this county and was an appropriate method of preserving the security of the courts. As to the allegation concerning the handcuffs, defendant made no showing that any juror was aware of the incident. No affidavits or other sworn testimony was presented to the court and defendant did not request a hearing on the issue. Under those circumstances, no prejudice to defendant was shown.

■■ Defendant cites as error the admission of various evidence presented by the State. James Reynolds, an occurrence witness, testified to various statements made by the victim during the incident. This evidence had some tendency to show the victim's nonbelligerent and submissive attitude and, in any event, did not prejudice the defendant. Testimony by James McGlynn, another occurrence witness, that defendant told him at the police station that he, McGlynn, "didn't know how the gun went off or how it happened" could be interpreted as an attempt by the defendant to discourage McGlynn from speaking truthfully to the police and thus to obstruct the investigation. Such conduct is admissible as evidence of a consciousness by the defendant of his guilt. *People v. Bloom* (1938), 370 Ill. 144, 18 N.E.2d 197.

■■ Defendant next contends that Dr. Dietrick, the pathologist who performed the autopsy, was not qualified to give an opinion as to the distance the weapon was fired. At trial, defendant objected only to the form of the question and thus waived any further objection to Dr. Dietrick's testimony.

■■ Defendant also argues that the State's inquiry concerning his marital status was prejudicial because it highlighted his illicit relationship with Mrs. McGlynn. Defendant had already testified on direct examination that he spent the night before the shooting with her at a local motel. The prejudicial effect, if any, of eliciting the fact that defendant was legally separated but not divorced would be minimal.

■■ Defendant also argues that the court erred in refusing to admit the following allegedly exculpatory evidence: (1) certified copies of the complaint for divorce filed by Mrs. McGlynn against the victim and the divorce decree on the grounds of physical cruelty, (2) testimony of a defense witness that it was not unusual for a person in defendant's job to carry a gun, and (3) a worksheet used by a defense witness to record the results of a barium antimony test on the hands of defendant and the victim. The copies of the complaint and divorce decree were offered to show the violent character of the victim. Such evidence is admissible only where there has been some evidence to support a claim of self-defense

(*People v. Allen* (1972), 50 Ill. 2d 280, 278 N.E.2d 762). Defendant did not contend that he acted in self-defense so the evidence was properly excluded.

■■ Defendant contends that the testimony concerning the nature of his job was necessary to destroy any inference that his possession of a gun implied an intent to kill the victim. Failure to permit that testimony was not reversible error. The witness was permitted to testify that he was employed in a job previously held by defendant which was quite dangerous at times and involved handling large amounts of cash. Also, defendant testified that he generally carried a gun when he went to East St. Louis because his company had often been robbed.

■■ Any error in refusing to admit the worksheet was harmless. The court admitted another defense exhibit, a graph showing the same results, which was prepared by the witness for use at trial, and in the witness' opinion was a better presentation of the results. Furthermore, the witness testified that the results in this case were inconclusive.

Defendant also argues that the court erred in ruling on various jury instructions. The court refused defendant's instruction in the form of IPI Criminal No. 25.02, listing the issues in involuntary manslaughter but including the proposition that the defendant was then capable of acting intentionally. Defendant argues that the instruction should have been given due to the evidence of his intoxication at the time of the incident. The instruction was properly refused. Voluntary intoxication is not a defense to the crime of involuntary manslaughter. (*People v. Arndt* (1972), 50 Ill. 2d 390, 280 N.E.2d 230.) Moreover, the definition of that offense requires only that a defendant act recklessly, not intentionally. Ill. Rev. Stat. 1975, ch. 38, par. 9—3.

Defendant also tendered two non-IPI instructions stating the presumption found in the Illinois Vehicle Code that a person with a blood alcohol content of 0.10 percent or more will be presumed to have been driving under the influence of intoxicating liquor (Ill. Rev. Stat. 1975, ch. 95½, par. 11—501). Those instructions were properly refused because that presumption applies only in prosecutions for that offense (Ill. Rev. Stat. 1975, ch. 95½, par. 11—501.1).

■■ Defendant also cites as error the giving of an instruction tendered by the State in the form of IPI Criminal No. 3.06 concerning admissions by a defendant. He argues, for the first time on appeal, that he did not deny certain material statements made by him and therefore the jury should not have been instructed to determine "whether the defendant made the admissions." Defendant has waived this objection by his failure to raise it at the instructions conference.

● 17 Finally, defendant contends that section 111—2(a) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 111—2(a))

which permits prosecution of felonies by information violates his constitutional right to be charged by indictment. This court has previously rejected constitutional challenges to that provision. *People v. Ferguson* (1977), 54 Ill. App. 3d 886, 368 N.E.2d 170; *People v. Tibbs* (1977), 46 Ill. App. 3d 310, 360 N.E.2d 993.

For the reasons stated, we affirm.

Affirmed.

MILLS and REARDON, JJ., concur.