Wayne S. MIKEL, Petitioner–Appellant,

v.

James H. THIERET, Warden, Menard Correctional Center, Respondent–Appellee.

No. 86–2573.

United States Court of Appeals, Seventh Circuit.

Submitted March 31, 1989 *.

Decided Oct. 4, 1989.

---

* After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." *See* Fed.R.App. 34(a); Circuit Rule 34(f). No such statement having been filed, the appeal has been submitted on the briefs and records.

Howard B. Eisenberg, Southern Illinois University School of Law, Carbondale, Ill., for petitioner-appellant and Wayne S. Mikel, Lincoln, Ill., petitioner-appellant, pro se.

Nathan P. Maddox, Asst. Atty. Gen., Office of the Atty. Gen. Criminal Appeals Div., Springfield, Ill., for James Thieret, respondent-appellee.

Before CUMMINGS and CUDAHY, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

FAIRCHILD, Senior Circuit Judge.

Wayne S. Mikel was convicted in an Illinois court on one count of murder and two counts of aggravated assault for firing a rifle from his co-defendant's pick-up truck on the night of 19 November 1977. The facts are recited in *People v. Mikel,* 73 Ill.App.3d 21, 29 Ill.Dec. 287, 391 N.E.2d 550 (4th Dist.1979). Mikel now appeals the denial of his federal *habeas corpus* petition; the facts relevant to these claims are discussed only as necessary. We affirm for the reasons stated below.

I. PROCEDURAL POSTURE

Upon conviction in Illinois, Mikel pursued a direct appeal where he was represented by appellate counsel different from his trial counsel. Appellate counsel raised ten points of error which the Illinois Court of Appeals considered and rejected in a twelve-page written opinion. *Mikel, supra.* Proceeding *pro se,* Mikel filed a petition for writ of *habeas corpus* in the Illinois Supreme Court.[1] The petition raised three issues already pressed on direct appeal, along with seven issues not presented on appeal. The Illinois Supreme Court summarily denied the petition without a hearing and without written opinion. This petition is irrelevant, however, to the requirement of exhaustion of state remedies. Only jurisdictional issues can properly be raised in an Illinois *habeas* proceeding; it is not deemed a state court remedy available for the federal claims Mikel raised. *See Gornick v. Greer,* 819 F.2d 160, 161 (7th Cir.1987); *Castille v. Peoples,* — U.S. —, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989). Although he did allege, in part, that the trial court lacked jurisdiction because the state proceeded by information rather than indictment, this states no federal claim.

Mikel next filed a federal *habeas corpus* petition pursuant to 28 U.S.C. § 2254, again *pro se,* and alleged eight claims, only three of which had been raised on his state appeal. The state's answer did not assert lack of exhaustion of state remedies, answered the merits of Mikel's three claims raised on the state appeal, and relied on procedural default as to the claims not raised on appeal. The parties consented to the conduct of proceedings by a magistrate under 28 U.S.C. § 636(c). Counsel was appointed. Reviewing the state court record, Magistrate Cohn denied the petition, finding against Mikel on the merits of the three claims he had raised on his state appeal, finding against him on his claim of ineffective assistance of counsel on that appeal, and finding that his failure to raise the other claims on appeal constituted a procedural default.

On appeal to this court, Mikel argues the three claims pressed on his state court appeal: (1) ineffective assistance of trial counsel due to threats made against coun-

1. A *habeas* petitioner in Illinois may apply for relief either directly in the Illinois Supreme Court or in the circuit court of the county in which petitioner is restrained or was sentenced. Ill.Rev.Stat. ch. 110, ¶ 10–103.

sel by the victim's son; (2) improper photographic identification procedure; and (3) failure to suppress pretrial statements in contravention of defendant's *Miranda* rights. Mikel also argues five claims not raised on direct appeal: (4) ineffective assistance of appellate counsel; (5) failure to instruct jury on beyond a reasonable doubt standard; (6) lack of jurisdiction because of failure to proceed by indictment; (7) denial of fair trial due to jury's exposure to trial publicity; and (8) illegal arrest without a warrant.

## II. EXHAUSTION OF STATE REMEDIES AND THE CLAIM OF INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

▆▆▆ Illinois provides a post-conviction remedy for a person claiming that his or her conviction rests upon the denial of a right under the federal or state constitution. Ill.Rev.Stat. ch. 38, ¶ 122–1, *et seq.* Mikel did not use that procedure. Because Illinois courts strictly apply the doctrines of waiver and *res judicata* in such post-conviction proceedings, it is usually unnecessary for those persons having taken a direct state court appeal to use this post-conviction remedy to satisfy the federal *habeas* exhaustion requirement. *People v. Gaines,* 105 Ill.2d 79, 87–88, 85 Ill.Dec. 269, 274, 473 N.E.2d 868, 873 (1984), *cert. denied,* 471 U.S. 1131, 105 S.Ct. 2666, 86 L.Ed.2d 282 (1985), cited in *Teague v. Lane,* —— U.S. ——, 109 S.Ct. 1060, 1068, 103 L.Ed.2d 334 (1989) (any claim which could have been raised on appeal, but was not, is deemed waived, while an appellate court's decision on any claim raised is deemed *res judicata* ). *Teague* also notes that the Illinois rules as to waiver and *res judicata* may be relaxed where fundamental fairness so requires. *Teague,* 109 S.Ct. at 1068 (citing *People v. Brown,* 52 Ill.2d 227, 230, 287 N.E.2d 663, 665 (1972)).

It is clear enough that an Illinois post-conviction court would have declined to consider Mikel's Claims 1, 2, and 3 on the ground of *res judicata* and would ordinarily have refused to consider Claims 5, 6, 7, and 8 on the ground of waiver. Our only problem is whether Claim 4, ineffective assistance of appellate counsel, would be treated by an Illinois post-conviction court as a fundamental fairness exception so that the waiver doctrine would not apply to it nor (if Claim 4 were sustained) to Claims 5, 6, 7, and 8. If any claim were not exhausted, then we would generally be required to vacate the denial of the petition and direct that the entire petition be dismissed. *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982).

Claim 4, however, is insubstantial, and a recent Supreme Court decision recognizes that where the state fails to rely on lack of exhaustion, we are free to consider the lack of merit of unexhausted claims. *Granberry v. Greer,* 481 U.S. 129, 134, 107 S.Ct. 1671, 1675, 95 L.Ed.2d 119 (1987).

To establish ineffective assistance of counsel, a defendant must demonstrate both deficient performance and resulting prejudice. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The proper measure of attorney performance is "reasonableness under prevailing professional norms." *Id.* at 688, 104 S.Ct. at 2064. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. at 2065. Where the claim challenges counsel's performance on appeal, "[g]enerally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Gray v. Greer,* 800 F.2d 644, 646 (7th Cir.1986).

Mikel's Claim 4, denial of the effective assistance of counsel on appeal, states only that "[c]ounsel on appeal failed to raise issues on appeal that could have gotten the conviction overturned, these issues had been raised at the trial stage." Nothing further is alleged or suggested. Mikel's present appointed counsel filed a brief, but did not address Claim 4. Mikel's *pro se* brief addresses the claim, but utterly fails to demonstrate that any issue not raised by counsel on his state appeal was significant in any degree, either by itself or by comparison with the issues which were argued.

The exhaustion doctrine "generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Murray v. Carrier*, 477 U.S. 478, 489, 106 S.Ct. 2639, 2646, 91 L.Ed.2d 397 (1986). In this case, however, we are satisfied that Mikel's claim of ineffective assistance of counsel on appeal wholly lacks substance, and would not, if presented to an Illinois post-conviction court, be treated as an exception to the Illinois waiver rule.

In any event, the state has failed to raise a nonexhaustion defense.

"The State's omission in such a case makes it appropriate for the court of appeals to take a fresh look at the issue. The court should determine whether the interests of comity and federalism will be better served by addressing the merits forthwith or by requiring a series of additional state and district court proceedings before reviewing the merits of the petitioner's claim.

.... [I]f it is perfectly clear that the applicant does not raise even a colorable federal claim, the interests of the petitioner, the warden, the state attorney general, the state courts, and the federal courts will all be well served even if the State fails to raise the exhaustion defense, the district court denies the habeas petition, and the court of appeals affirms the judgment of the district court forthwith."

*Granberry*, 481 U.S. at 134–135, 107 S.Ct. at 1675–76. The state seems content to have us treat all claims as exhausted, and we see no comity or federalism interest served at this stage by our directing dismissal of the petition for lack of exhaustion.

### III. PROCEDURAL DEFAULT

 The failure of a person convicted in a state court to raise a federal claim on his state appeal is a procedural default which bars that claim from being considered on federal *habeas* unless the person can show "cause and prejudice." *Murray*, 477 U.S. at 489, 106 S.Ct. at 2646; *see also United States ex rel. Spurlark v. Wolff*,

699 F.2d 354, 361 (7th Cir.1983) (*en banc*). "Ineffective assistance of counsel, then, is cause for a procedural default." *Murray*, 477 U.S. at 488, 106 S.Ct. at 2645. It follows, however, from our earlier discussion of the lack of substance of Mikel's ineffective assistance of appellate counsel claim that he has not shown cause for his failure to raise Issues 5, 6, 7, and 8 on his state appeal. Therefore, the district court correctly decided that these claims are barred.

### IV. CLAIMS MIKEL RAISED ON HIS STATE APPEAL

#### A. Ineffective Assistance of Trial Counsel

 As to his trial counsel, Mikel does not offer any evidence of deficient performance. Mikel even asserts that, "each and every objection that the attorney had made, or the pretrial motions he had filed in the Circuit Court were to the benefit and help to the defendant." His only cognizable assertion is that "after the decedent's son threatened [counsel] with bodily harm, you can read the trial transcripts and see how it affected his representation...." In reviewing the transcripts, however, we find no appreciable diminution of zeal. For example, defense counsel's post-trial motion for new trial and motion in arrest of judgment alleged 39 points of error and was filed and argued subsequent to the threats made against him. Contrary to Mikel's claim, we find that defense counsel's representation fell within the wide range of professional assistance.

#### B. Improper Photographic Identification

On November 30, 1977, while Mikel was in custody and represented by counsel, police went to the home of one of the victims of the shootings, and showed him an array of ten photographs. He chose Mikel's photo as his assailant. Five days before, the victim had seen Mikel's photograph on the front page of the local newspaper. After denying Mikel's pre-trial motion to suppress evidence of this identification, the

state court admitted it at trial. Despite the earlier identification, this victim was unable to identify Mikel in court as the assailant. The state court found that the photo display was not suggestive; Magistrate Cohn held that because Mikel did no more than assert in "conclusory fashion" that the display was suggestive, he did not show that the state court's factual finding was erroneous.

Admission of the identification of Mikel's photograph is challenged on two theories: (1) that the photographic show-up (apparently used with several witnesses) was impermissible because neither Mikel nor his counsel was present to observe matters which might prove that the show-up was suggestive, and (2) that it was suggestive as to the particular victim who had seen Mikel's photograph in the newspaper.

■ Although the Sixth Amendment gives a criminal defendant the right to have counsel present at a line-up, *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), there is no corresponding Sixth Amendment right during a photographic display. *United States v. Ash,* 413 U.S. 300, 321, 93 S.Ct. 2568, 2579, 37 L.Ed.2d 619 (1973).[2]

■ Mikel suggests that there is an independent due process right for his counsel to be present, but cites no authority to support this claim; we think due process was fully satisfied by the pre-trial evidentiary hearing on his motion to suppress.[3]

Neither the state trial court nor the Illinois appellate court found any evidence of suggestiveness in the procedure followed. Instead, the Illinois appellate court found that witnesses were shown ten photos face-up on a table in random order. The entire procedure took only about five minutes, and Mikel was correctly identified each time. A state court's factual determinations are presumed correct under 28 U.S.C. § 2254(d) on federal *habeas* review. *United States ex rel. Kosik v. Napoli,* 814 F.2d 1151, 1153 (7th Cir.1987); *see Sumner v. Mata,* 449 U.S. 539, 551, 101 S.Ct. 764, 771, 66 L.Ed.2d 722 (1981). Mikel has suggested nothing to establish that the state court's factual determinations were erroneous.

■ Even if we were to accept the proposition that the procedure was unduly suggestive to the particular victim who had seen Mikel's photograph in the newspaper, Mikel would also need to establish that under the totality of the circumstances the suggestive procedure created a very substantial likelihood of irreparable misidentification. *Manson v. Brathwaite,* 432 U.S. 98, 109–14, 97 S.Ct. 2243, 2250–53, 53 L.Ed.2d 140 (1977); *Kubat v. Thieret,* 867 F.2d 351, 357 (7th Cir.1989); *Kosik,* 814 F.2d at 1155. Otherwise, any weakness in the identification is for the jury to evaluate. *Manson,* 432 U.S. at 117, 97 S.Ct. at 2254.

The evidence, however, shows no substantial likelihood of irreparable misidentification. The witness had an opportunity to view his attacker when stopped alongside the attacker's vehicle at a stop light; the witness's attention was picqued when his attacker shook his fist, pointed, and smiled at the witness; the witness accurately described his attacker, took very little time to identify him from the photo array, and was asked to identify him only

---

**2.** Under Illinois law, the police should have used a line-up rather than a photo display, since Mikel was in custody. *People v. Holiday,* 47 Ill.2d 300, 265 N.E.2d 634 (1970); *People v. Meredith,* 37 Ill.App.3d 895, 899, 347 N.E.2d 55, 59 (4th Dist.1976). However, absent suggestiveness and the likelihood of misidentification, the evidence remains admissible. *People v. Mikel,* 73 Ill.App.3d at 29, 29 Ill.Dec. at 293, 391 N.E.2d at 556; *Meredith,* 37 Ill.App.3d at 899, 347 N.E.2d at 59. Moreover, this state law principle confers no federal constitutional right.

**3.** Mikel also suggests that although he had no right to have counsel present at the photo display, he had the right *personally* to be there.

The Supreme Court has stated that due process guarantees a defendant's "right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Kentucky v. Stincer,* 482 U.S. 730, 745, 107 S.Ct. 2658, 2667, 96 L.Ed.2d 631 (1987). However, the conclusion in *Ash,* 413 U.S. at 319–21, 93 S.Ct. at 2578–79, that the presence of counsel at the display is not necessary to insure fairness defeats this claim, unless the defendant can offer a reason why his presence could better assure fairness than his attorney's, which Mikel has not done.

eleven days after the crime. These facts evidence more certainty of identification than those found adequate in *Kosik*—the witness in this case had more time to view the defendant, was closer to him, and gave the photo identification much sooner after the crime. *See Kosik*, 814 F.2d at 1156–60. The witness' later failure to identify Mikel at trial was for the jurors to weigh as they saw fit.

### C. *Improper Use of Pre-Trial Statements*

Mikel contends that his statements introduced in evidence were not voluntarily given, because at the time he gave them he had been questioned for several hours, did not understand his *Miranda* rights, and was under the influence of alcohol and marijuana.[4]

▮▮▮▮ Voluntariness is a legal question subject to an independent federal determination, and this court is not bound by a state court's finding of voluntariness. *Miller v. Fenton*, 474 U.S. 104, 110–11, 106 S.Ct. 445, 449–50, 88 L.Ed.2d 405 (1985); *Quadrini v. Clusen*, 864 F.2d 577, 582 (7th Cir.1989); *see also United States ex rel. Cole v. Lane*, 793 F.2d 155, 157 (7th Cir. 1986). *Cf., Bryan v. Warden, Indiana State Reformatory*, 820 F.2d 217, 219–20 (7th Cir.), *cert. denied*, 484 U.S. 867, 108 S.Ct. 190, 98 L.Ed.2d 142 (1987). However, while the ultimate issue of voluntariness is subject to *de novo* federal review, whether a waiver was knowing and intelligent remains a question of fact, and a state court's factual determination on this issue is presumed correct provided it is supported by the record. *Quadrini*, 864 F.2d at 582; *Perri v. Director, Dep't of Corrections, State of Ill.*, 817 F.2d 448 (7th Cir.), *cert. denied*, 484 U.S. 843, 108 S.Ct. 135, 98 L.Ed.2d 92 (1987).

▮▮▮ The state trial court, the state appellate court, and the federal magistrate, all found Mikel's confession to be voluntary. *Mikel*, 73 Ill.App.3d at 28, 29 Ill.Dec. at 292, 391 N.E.2d at 555 (1979). As Magistrate Cohn stated,

[a]fter thorough review of the record, we find ample evidence to support the [state] court's conclusion. We find petitioner's statements about the extent of his use of alcohol and marijuana prior to his confession not believable. The statements of the arresting officers coupled with petitioner's signed confessions and statements of voluntariness and the three *Miranda* warnings militate against petitioner's argument of drug-influenced statements. We also note plaintiff gave his statements seven hours after his last alleged drink, a long sobering period during which petitioner consumed some five cups of coffee. We find petitioner's statements given freely and voluntarily....

*Mikel v. Thieret*, Civil No. 85–3079 mem. op. at 5–6 (S.D.Ill. Aug. 7, 1986). The record contains no evidence of police overreaching and is more than adequate to support the finding that Mikel's statements were voluntary. Our own review satisfies us that the statements were voluntary.

The denial of the petition is AFFIRMED.

---

**4.** Mikel also alleges that his arrest was illegal and that his statements were therefore fruit of the poisonous tree. However, as already discussed, Mikel's illegal arrest claim is barred by his procedural default.